**GREATER SOUTHWEST OFFICE PARK, LTD., Appellant,**

v.

**TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Appellee.**

No. 01–89–00314–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 18, 1990.

Rehearing Denied March 15, 1990.

Herbert N. Lackshin, Drew M. Capuder, Lackshin & Nathan, Houston, for appellant.

Robert J. King, James W. Paulsen, Pamela Nichols, Liddell, Sapp, Zivley, Hill & LaBoon, for appellee.

Before WARREN, DUGGAN and MIRABAL, JJ.

## OPINION

WARREN, Justice.

Greater Southwest Office Park, Ltd. ("Greater Southwest") appeals from the trial court's order granting summary judgment to Texas Commerce Bank National Association ("the Bank"), and dismissing Greater Southwest's cause of action with prejudice.

Greater Southwest was the maker of a promissory note, in the original principal amount of $5,000,000, payable to the Bank. The note was secured by a deed of trust and security agreement, executed by Greater Southwest for the benefit of the Bank. In November of 1987, the Bank declared a default and posted the real property, which was the subject of the deed of trust, for foreclosure. On December 1, 1987, the Bank purchased the land at a public foreclosure sale for the sum of $4,847,903.96, which was the amount of the outstanding debt plus the costs of the sale. The Bank did not sue Greater Southwest for a deficiency balance; therefore, the holdings made in this opinion are not intended to express our opinion in cases involving a deficiency suit when the debtor is claiming

that the lender grossly underbid on the foreclosed realty.

On May 16, 1988, Greater Southwest filed its original petition claiming that: (1) the fair market value of the real property foreclosed on by the Bank was $10,529,000; (2) the Bank bid an unconscionably low price for the property at the foreclosure sale; (3) Greater Southwest and the Bank were in a "trust arrangement," giving rise to a duty to make an honest effort to secure a fair price for the collateral at the foreclosure sale; and (4) this conduct constituted constructive fraud, actual fraud, and an intentional tort. Greater Southwest prayed for compensatory damages in the amount of $5,682,000, and exemplary damages in the amount of not less than $10,-000,000.

On August 5, 1988, the trial court granted the Bank's special exceptions and ordered Greater Southwest to replead. On October 5, 1988, Greater Southwest filed its first amended original petition, which reiterated the same complaints made in its original petition, added its complaint that the Bank engaged in a policy of not compensating debtors for the fair market value of foreclosed properties, and alleged that the Bank breached its duty of good faith and fair dealing.

The Bank filed a motion for summary judgment, claiming that it was entitled to summary judgment as a matter of law, on the ground that Greater Southwest had failed to state a cognizable cause of action. The court granted the Bank's motion for summary judgment, dismissing Greater Southwest's entire cause of action with prejudice, on December 2, 1988.

In four points of error, Greater Southwest claims that the trial court erred in granting summary judgment, and in failing to grant its motion for new trial, because the Bank did not prove, as a matter of law, that Greater Southwest was not entitled to recover on any of its causes of action.

■ The trial court's summary judgment was based on Greater Southwest's failure to state a cause of action. If after amending, pursuant to an order sustaining special exceptions, a plaintiff still fails to state a cause of action, the trial court may grant summary judgment on the pleadings. *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex.1971). In reviewing a judgment granting a summary judgment on the pleadings, we must reverse when plaintiff's pleadings, if proved, would authorize a recovery under any theory of law.

The first two points of error claim that, if a secured lender bids, but fails to bid a fair or reasonable price at a foreclosure sale of the collateral, it is liable to the borrower for damages. The second two points of error claim that the bank did not address Greater Southwest's claim for constructive fraud and intentional tort, and, therefore, judgment was improperly granted on those two causes.

Greater Southwest's entire cause of action rests on the premise that the Bank is liable to it in damages because it purchased the collateral at a foreclosure sale at a price that was less than fair or reasonable. Greater Southwest does not contend that the sale was irregular in any respect, nor does it seek to set aside the sale.

■ In the absence of irregularity that caused or contributed to the property being sold for a grossly inadequate price, mere inadequacy of consideration is not grounds for setting aside a trustee's sale. *American Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 587 (Tex.1975); *Donaldson v. Mansel*, 615 S.W.2d 799, 802 (Tex.Civ.App. —Houston [1st Dist.] 1980, writ ref'd n.r. e.).

Greater Southwest contends that the above rule does not apply to our case because it is suing, not to invalidate the sale, but for damages. To support this contention it relies on *Lee v. Sabine Bank*, 708 S.W.2d 582 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.), and other cases involving the allowance of set-offs in suits for deficiencies, where it was alleged that the price bid by the lender was inadequate. In *Lee v. Sabine Bank*, Sabine Bank advanced Lee $500,000 to purchase a boat and for working capital; the bank retained a lien on the boat as security. With a balance of $404,-000 still owing on the note, Lee defaulted.

Sabine Bank purchased the boat at a judicial sale for $175,000, after crediting other pledged security and adding the expenses of sale and interest, leaving Lee with a balance of $226,064 owing under the terms of the note. Lee sued, seeking to prevent Sabine Bank from taking the other security pledged; Sabine Bank counterclaimed for the deficiency owed under the note. The trial court denied Lee's requested relief and awarded Sabine Bank judgment for its deficiency of $240,854. Lee claimed that the trial court erred by allowing him credit on the deficiency for the sales price bid by Sabine Bank, rather than the fair market value at the time of sale.

The court stated that "a lender who has secured collateral, whether personalty or realty is under a trust arrangement with the borrower, in the event of foreclosure, to make an honest effort to reduce the loan as much as possible by securing a fair price for the collateral." *Lee v. Sabine Bank*, 708 S.W.2d at 584. "[W]here there is a probable significant disparity between the sale price of the property and its fair market value, the borrower may contest the sale and present evidence contesting such." *Id.* at 585. It limited the rule to those cases where the lender or its surrogate was the purchaser at foreclosure. The court, however, affirmed the trial court because no evidence had been presented as to the market value of the ship at the time of the judicial sale.

First, we note that, because the *Sabine Bank* case did not concern realty, any comments by the court concerning the foreclosure of realty collateral is dicta. Second, we note that in our case, like *Sabine Bank*, no evidence was presented as to the fair market value of the collateral at the time of the foreclosure sale. In *Sabine Bank*, the court relied heavily on *Walter E. Heller & Co. v. O/S Sonny V.*, 595 F.2d 968 (5th Cir.1979). In that case, involving a preferred ship's mortgage, the court held that the borrower should have been allowed to contest the amount of the deficiency claimed by Heller by showing the market value of the vessel at the time of sale as opposed to the foreclosure sales price. The Ship Mortgage Act, 46 U.S.C.

App. §§ 911–984 (1987), "when read together with the statutes delineating the judicial sale procedure in the federal courts forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel, and any resulting deficiency adjudged against the debtor *in personam*." *Id.* at 971. Questions of deficiency judgments and judicial sale procedures concerning collateral under the Ship Mortgage Act, are, therefore, governed by federal law. *Id.* Under the federal rule, a "fair value" offset may be allowed under proper circumstances where the equity of the circumstances requires it. *Id.* It is clear that the federal law under the Ship Mortgage Act is much different from Texas law pertaining to the foreclosure of real estate under a deed of trust.

In *Halter v. Allied Merchants Bank*, 751 S.W.2d 286 (Tex.App.—Beaumont 1988, writ denied), a suit for deficiency after foreclosure on realty, the court reiterated its *Sabine Bank* rule pertaining to the borrower's right to contest the fair value obtained at the foreclosure sale. It cited as authority its dicta in the *Sabine Bank* case. However, the court affirmed the trial court's allowance of the foreclosure sale price against the deficiency, because there was no summary judgment evidence showing that the bank or its surrogate purchased the property at foreclosure. *Id.* at 288. The court distinguished its *Halter* case from *American Sav. & Loan Ass'n v. Musick*, by stating that *Musick* did not speak to the issue of deficiency.

Greater Southwest also relies on *Olney Sav. & Loan Ass'n v. Farmers Market of Odessa, Inc.*, 764 S.W.2d 869 (Tex.App.—El Paso 1989, writ pending), in its effort to extend the lender's liability beyond that announced in *American Sav. & Loan Ass'n v. Musick*. The *Olney* opinion cited *Lee v. Sabine Bank* for the proposition that, since the bank was under a trust arrangement with the borrower, it must, in the event of a foreclosure, make an honest effort to reduce the loan as much as possible by securing a fair price for the collateral. *Olney*, 764 S.W.2d at 871. This rule was repudiated by Chief Justice Osborn in

his concurring opinion and, possibly, by Judge Woodard in a concurrence without opinion. We are of the opinion that Chief Justice Osborn's concurrence correctly states the Texas rule regarding the lender's rights and duties under a foreclosure sale. We also agree with Judge Osborn's opinion that the rules are the same whether the lender or a third party is the successful bidder at a foreclosure sale. *Id.* at 873.

In *Savers Fed. Sav. & Loan v. Reetz*, 888 F.2d 1497 (5th Cir.1989), the court analyzed the *Sabine Bank v. Lee, Halter v. Allied Merchants Bank*, and *Olney v. Farmers Market* cases relied on by Greater Southwest. The court, speaking through Judge Garwood, concluded that those cases depended on dicta, and were not authority for the proposition that a borrower could contest a non-judicial sale because of inadequacy of purchase price when there has been no irregularity in the sale. The court reaffirmed the Texas rule, stated in *American Savings Ass'n v. Musick*, that in the absence of an irregularity in the foreclosure sale, the borrower could not contest the adequacy of price received at the sale.

We hold that: (1) in the absence of evidence of irregularity in the sale, causing the property to be sold for a grossly inadequate price, mere inadequacy of consideration is not grounds for setting aside a trustee's sale; (2) the rule applies whether the lender, its surrogate, or a third party is the buyer at the trustee's sale; and (3) the rule applies whether the borrower is seeking to set aside the trustee's sale or is suing for damages.

Because there was no irregularity alleged or shown in the trustee's sale, Greater Southwest's amended pleadings stated no cause of action against the Bank. Therefore, the trial court correctly dismissed the action.

In its third and fourth points of error, Greater Southwest contends that summary judgment was improperly granted because the Bank failed to address, and, therefore, failed to disprove, the allegations of constructive fraud and intentional or prima facie tort.

The allegations that Greater Southwest contends amount to constructive fraud and intentional tort are as follows:

(1) the Bank has a policy of bidding not less than 70% of the fair market value of the property on which it holds a first lien, but not more than the note balance owed;

(2) this scheme was intentional, willful, and without justification or excuse;

(3) a result of this policy is to not fairly compensate debtors;

(4) the Bank acted with gross indifference to its duty of honesty and fair dealing owed to Greater Southwest; and

(5) the Bank's conduct was deceptive, violative of confidences, and offends public policy.

■ The acts and attitudes of which Greater Southwest accuses the Bank do not amount to a breach of contract or a tort. In the absence of a forbidding statute, the presence of a policy or scheme to do an act which is otherwise lawful, does not make the act unlawful. If there is no duty on the Bank's part to bid a minimum amount at a trustee's sale, then its policy to bid 70% of the property's value, but no more than the amount owing, is not actionable. Further, we have found no Texas cases recognizing a "prima facie tort" (the infliction of an intentional harm by an act which is lawful, but results in special damage), nor have we been cited to any.

■ Greater Southwest's claim of a constructive fraud is based on its allegation that the Bank bid far less than the market value on the property in question and the following statement by Billy Goldberg in his affidavit:

During the course of my business career, I have had a long business relationship with TCB. Either I or companies with which I was affiliated received and paid back millions of dollars in loans to TCB and its affiliates. During that time, TCB solicited by [sic] business and, through me, the business of Greater Southwest; and lead me to believe that I could trust them to be fair and honest in their conduct towards me and the companies with which I was affiliated. Because of this

long relationship and the solicitation of my business, I came to trust and rely upon the conduct and representation of TCB's representatives.

My relationship with TCB began in the middle 1970's, when I became friends with TCB's president, Bill Heiligbrodt. Either I, companies with which I was affiliated, or Greater Southwest then began a series of substantial loan [sic], most of which are now paid off, totaling several million dollars.

Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964). We have previously discussed the Bank's duty in bidding on the foreclosed property in our case, and have found that there was no breach of duty. The allegations contained in Goldberg's affidavit, if taken as true, are insufficient to create a trust or fiduciary relationship between Greater Southwest and the Bank.

In Texas, a special relationship does not normally exist between a borrower and a lender, and when one has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities. *See State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661 (Tex.App.—El Paso 1984, writ dism'd by agr.). Goldberg's mere subjective trust in the Bank, by itself, is not enough to transform the arms-length dealings of a debtor and creditor into a fiduciary relationship. *Thigpen v. Locke*, 363 S.W.2d 247 (Tex.1962).

Each of appellant's points of error is overruled, and the judgment is affirmed.