**F.G. FARAH, Appellant,**

v.

**MAFRIGE & KORMANIK, P.C., Michael Boswell, and Scott Reiter Link, Appellees.**

No. 01–95–00027–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 11, 1996.

Rehearing Overruled Aug. 6, 1996.

Michael C. O'Connor, Houston, for appellant.

Donald B. McFall, Richard A. Sheehy, Kenneth R. Breitbeil, Lauren L. Beck, Houston, for appellees.

Before O'CONNOR, HUTSON–DUNN and ANDELL, JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal from a take-nothing summary judgment rendered against the appellant, F.G. Farah, in a legal malpractice action arising out of a lender liability lawsuit against three First City banks (collectively, the "First City entities"). We reverse in part and remand for further proceedings consistent with this opinion.

### The Underlying Litigation

Farah is a homebuilder who financed his business between 1963 and 1984 with loans from two related Houston banks: First City

National Bank of Houston, a/k/a First City–Downtown (FCD); and First City–Westheimer (FCW). Farah, who was the custodian of large sums of his relatives' money, entered into an oral agreement with FCD in 1963 to use this money to provide real estate financing for his construction business. The accounts Farah maintained with FCD were non-interest bearing. The parties agreed FCD would provide financing for Farah's business so long as Farah maintained accounts with FCD in excess of 15 percent of the total amount of the loans and complied with the terms and conditions of the individual loan agreements. Farah testified in deposition FCD obligated itself to make any reasonable loans Farah would ask for in relation to the agreement. The parties operated under this oral agreement between 1963 and 1982.

In 1982, FCD established a new policy that prohibited real estate loans under $1,000,000. Farah's loans with FCD had been for less than $1,000,000. Fred Herring, the executive vice-president of FCD, notified Farah of the new policy in November 1982 but said Farah could still borrow less than $1,000,000 if FCW were brought into the contractual banking relationship Farah had with FCD. Herring told Farah that FCW would expect a couple of deposits, but the remainder of the money should be left at FCD. In December 1982, Farah met with officers of FCW and they agreed Farah could conduct business with FCW under the same conditions he had conducted business with FCD since 1963. FCD did not make any new loans to Farah after December 1982, but it did renew an existing loan and kept large amounts of Farah's money he had deposited pursuant to the original agreement.

On August 17, 1984, FCW notified Farah for the first time he would not receive approval for a construction loan. FCW's officers refused to tell Farah the reason for FCW's decision. Farah requested a $100,000 working capital loan from FCD on September 9, 1994, but it was refused for no stated reason.

Farah retained the law firm of Mafrige & Kormanik, P.C. (the firm) in June 1987 to pursue legal action against FCD, FCW, and their holding corporation, First City Bancorporation of Texas, Inc. (FCB). J. Michael Boswell and Scott Reiter Link were employed by the firm, and they filed suit against the First City entities on behalf of Farah (the "underlying suit"). The record does not contain the pleadings in Farah's underlying suit; the only pleading from that suit is an order granting partial summary judgment. The trial court granted a partial summary judgment for FCD and FCB on all of Farah's claims based on the statute of limitations, and for FCW on Farah's tort claims based on limitations. Because FCW did not seek summary judgment on Farah's breach of contract claim against FCW, the court did not address this cause of action.

In April 1991, the remainder of Farah's suit, which consisted of his contract claim against FCW, was dismissed for want of prosecution. In August 1991, Farah met with Steven Mafrige and Link and learned the underlying suit had been dismissed because of errors by the firm. The firm attempted to appeal the dismissal, but the Supreme Court of Texas dismissed the appeal for want of jurisdiction on November 8, 1991.

### The Present Suit

Farah filed suit against the firm for legal malpractice. On November 5, 1993, in his first amended original petition, Farah asserted causes of action for negligence and violations of the Texas Deceptive Trade Practices Act (DTPA) against the firm, Boswell, and Link. Farah alleged six acts or omissions of negligence and four violations of the DTPA that caused him damages. Farah alleged that, because of the firm's malpractice, he was unable to recover from the First City entities on all of his causes of action. Farah sought at least $1,000,000 in damages from the firm because that is what he alleged he would have recovered had the firm exercised proper care. Farah also sought treble damages and attorney's fees pursuant to his DTPA cause of action.

In their first amended original answer and special exception, the defendants generally denied all of Farah's allegations and asserted several affirmative defenses, including limitations and the statute of frauds. The defen-

dants also filed a motion for partial summary judgment on two grounds. First, the defendants asserted they had conclusive proof their negligence, if any, in handling the underlying suit could not have caused injury to Farah on any of his causes of action except for the breach of contract claim against FCW. Second, the defendants asserted all of Farah's causes of action against Boswell and Link in the malpractice suit were barred by limitations because neither party was timely joined in Farah's first amended original petition.

Farah filed a response to the defendants' motion for partial summary judgment in which he argued the defendants had not disproved causation in the underlying suit as a matter of law, and the joinder of Boswell and Link in the present suit was timely. Farah filed a second amended petition and asserted the firm was negligent in handling the underlying suit for the following reasons: (1) the firm should have alleged causes of action against the First City entities for defamation and tortious interference with contractual relations arising from the defamation; (2) the firm should have alleged an alter-ego or agency relationship between the First City entities; and (3) the firm should have asserted alter-ego in its response to the First City entities' motion for summary judgment in the underlying case.

The defendants filed a supplemental motion for summary judgment in response to Farah's response and requested "complete summary judgment." This supplement was based in part on the new allegations in Farah's second amended petition. The firm also asserted additional reasons Farah could not prove causation on his underlying claims against the First City entities.

Farah filed a third amended petition in response to the defendants' supplemental motion for summary judgment and asserted the firm committed legal malpractice because it should have alleged promissory estoppel and fraudulent and negligent misrepresentations in the underlying suit. Farah also filed a brief response to the firm's supplemental motion. The defendants did not file an amended or supplemental motion for summary judgment to address the additional claims in Farah's third amended petition.

The trial court rendered a take-nothing summary judgment on all of Farah's claims against the firm. The order did not state the grounds for the ruling. Farah filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## Standard of Review

Generally, to recover on a claim of legal malpractice, a plaintiff must prove: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995). A cause of action for legal malpractice is in the nature of a tort and is thus governed by the two-year statute of limitations. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988); *Utica Ins. Co. v. Pruitt & Cowden*, 902 S.W.2d 143, 147 (Tex.App.—Houston [1st Dist.] 1995, no writ).

A party moving for summary judgment has the burden of proving there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt.*, 690 S.W.2d 546, 548 (Tex.1985); *Long v. State Farm Fire & Cas. Co.*, 828 S.W.2d 125, 126–27 (Tex.App.—Houston [1st Dist.] 1992, writ denied); Tex.R.Civ.P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548–49; *Long*, 828 S.W.2d at 127.

When a defendant moves for summary judgment, he must either: (1) disprove at least one element of the plaintiff's cause of action; or (2) plead and conclusively establish each essential element of his affirmative defense, thereby rebutting the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995); *Liggett v. Blocher*, 849 S.W.2d 846, 850 (Tex.App.—Houston [1st Dist.] 1992, no writ). In the present case,

the defendants moved for summary judgment based both upon Farah's causes of action in the underlying suit and upon the affirmative defense of limitations in the present suit. Therefore, the defendants had the burden of conclusively establishing: (1) the defendants' negligence, if any, did not cause Farah damages in the underlying suit because he could not have recovered from the First City entities on any claims the defendants asserted or should have asserted; and (2) the claims against Boswell and Link in the malpractice suit were barred by limitations.

## A.

### Overbreadth of Judgment

 Farah contends in point of error one the trial court erred in rendering a complete summary judgment because the defendants' motions did not address all of Farah's claims. Specifically, Farah contends the defendants did not address Farah's causes of action in the underlying suit for defamation, tortious interference with contractual relations, promissory estoppel, and fraudulent or negligent misrepresentations. A defendant cannot obtain a summary judgment on causes of action not addressed in its motion for summary judgment. *Stiles v. RTC,* 867 S.W.2d 24, 26 (Tex.1993); *Johnson v. Rollen,* 818 S.W.2d 180, 183 (Tex.App.—Houston [1st Dist.] 1991, no writ). We cannot affirm a summary judgment on a ground not included in the motion for summary judgment. *Stiles,* 867 S.W.2d at 26.

### Defamation & Tortious Interference with Contractual Relations

 In their motion for partial summary judgment, the defendants alleged that any claims Farah could have made for defamation and tortious interference with contractual relations in the underlying suit were barred by limitations. The defendants made these allegations even though Farah had not yet included those claims in his pleadings. In his second amended petition, Farah claimed the firm should have asserted these causes of action in the underlying suit. In his third amended petition, Farah claimed the defendants were negligent for not asserting claims

for promissory estoppel and fraudulent or negligent misrepresentations. The defendants did not specifically address these allegations of negligence in their motions for summary judgment. However, the defendants did request "complete summary judgment" in their supplemental motion.

The defendants assert several reasons why their motions for summary judgment addressed all of the causes of action Farah asserted in his pleadings. The defendants argue that, in their motion for summary judgment, they addressed Farah's allegations regarding defamation and tortious interference with contractual relations, albeit early. We agree. We overrule this point as to defamation and tortious interference with contractual relations.

### Fraudulent Misrepresentations

 The defendants contend their motions for summary judgment were broad enough to address Farah's claim for fraudulent misrepresentation in his third amended petition because it is another name for common law fraud. We agree. One of the elements of common-law fraud is a fraudulent misrepresentation. *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994); *Bayou Terrace Inv. Corp. v. Lyles,* 881 S.W.2d 810, 814 (Tex.App.—Houston [1st Dist.] 1994, no writ).

### Promissory Estoppel & Negligent Misrepresentations

 The defendants contend their motion was broad enough to address Farah's claims for negligent misrepresentation and promissory estoppel because those claims were not additional claims in the present suit, but rather, additional reasons to support Farah's malpractice claim against the firm. In other words, the defendants allege Farah attempted to bolster his legal malpractice claim by asserting additional claims that could have been raised against the First City entities in the underlying case. The defendants assert the cases that require a defendant to amend his motion for summary judgment to address a newly pleaded cause of action are distinguishable from the facts of this case. *See,*

*e.g., Stiles,* 867 S.W.2d at 26; *Johnson,* 818 S.W.2d at 183. We agree with the defendants, but only if the grounds actually asserted in their motion were sufficient to show Farah could not have recovered from the First City entities had the firm asserted the additional causes of action Farah contends they should have. *See McConnell v. Southside ISD,* 858 S.W.2d 337, 341 (Tex.1993) (a motion for summary judgment must expressly state the grounds on which it is made); *Wheeler v. Yettie Kersting Mem. Hosp.,* 761 S.W.2d 785, 787 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (a motion for summary judgment will stand or fall on the grounds specifically stated in the motion). The issue is whether the grounds in the defendants' motions were broad enough to cover the negligent misrepresentation and promissory estoppel claims Farah alleges the defendants would have asserted in the underlying suit had they not been negligent.

■ We first consider whether the defendants' motions for summary judgment were broad enough to cover the negligent misrepresentation claim. In their motions for summary judgment, the defendants alleged two defenses against Farah's tort claims in the underlying suit. First, the defendants alleged Farah's tort causes of action sounded only in contract. Second, the defendants argued that all of Farah's tort causes of action were barred by limitations when he hired the firm. We conclude the defendants' motions for summary judgment were broad enough to address the tort of negligent misrepresentation in the underlying suit.

■ That leaves one remaining cause of action, promissory estoppel. Although promissory estoppel is normally a defensive theory, it may be asserted by a plaintiff as an affirmative ground for relief. *Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 707 (Tex. App.—Houston [1st Dist.] 1988, writ denied). Nothing in the defendants' motions for summary judgment specifically addressed the underlying claim for promissory estoppel. A motion for summary judgment must state the specific grounds on which it is made. TEX. R.APP.P. 166a(c); *McConnell v. Southside ISD,* 858 S.W.2d at 341; *Pettitte v. SCI Corp.,* 893 S.W.2d 746, 747 (Tex.App.—Hous-

ton [1st Dist.] 1995, no writ). Although the affirmative defenses of limitations and the statute of frauds are applicable to promissory estoppel, the defendants only asserted these affirmative defenses with reference to Farah's tort and contract claims. The defendants did not assert these defenses with reference to Farah's allegation in his third amended petition that the firm should have asserted promissory estoppel in the underlying suit.

The defendants rely on *Judwin Properties, Inc. v. Griggs & Harrison, P.C.,* 911 S.W.2d 498 (Tex.App.—Houston [1st Dist.] 1995, no writ), to argue that their motions for summary judgment were broad enough to address all claims Farah alleged in his pleadings. In *Judwin Properties,* Griggs filed suit against Judwin to recover attorney's fees. 911 S.W.2d at 500. Judwin filed a counterclaim and alleged the statement of services Griggs attached to its petition contained confidential and privileged information about Griggs' representation of Judwin. *Id.* Judwin did not allege a cause of action in its counterclaim. *Id.* at 503. Rather, Judwin made factual allegations of damages that were, on their face, couched in tort, contract, and breach of fiduciary duty. *Id.* Griggs filed a motion for summary judgment against Judwin's "claim(s)" on the ground that Judwin did not sustain any damages from Griggs' conduct. *Id.* at 501–03. Judwin filed an amended counterclaim alleging the same facts that supported its original counterclaim and added that Griggs' conduct constituted a breach of contract, breach of implied warranty, breach of fiduciary duty, negligence (legal malpractice), and gross negligence. *Id.* at 501. Under each of the headings, Judwin listed an identical set of acts that it claimed caused it damages. *Id.* Griggs did not amend its motion for summary judgment to address Judwin's amended counterclaim, and the trial court granted Griggs' motion for summary judgment as to all causes of action in Judwin's amended counterclaim. *Id.*

On appeal in *Judwin Properties,* this Court held the causes of action eventually specified (and clarified) in Judwin's amended counterclaim were contemplated by Griggs' motion for summary judgment. *Id.* at 502–

03. We held that, after Judwin amended its counterclaim and filed its response to Griggs' motion for summary judgment, Judwin should have specially excepted and asserted the grounds relied on by the movant were unclear or ambiguous. *Id.*

We hold *Judwin Properties* is distinguishable from this case. In *Judwin Properties,* Griggs moved for summary judgment on the ground it had negated the damages element of all possible claims contemplated in Judwin's original counterclaim. Here, in contrast, the defendants moved for "complete summary judgment" against Farah's tort and contract claims against the First City entities in the underlying suit. The defendants in this case tied their summary judgment grounds specifically to Farah's underlying tort and contract claims, presumably because Farah had not yet asserted that the defendants should have filed a claim for promissory estoppel in the underlying suit. When Farah asserted in his third amended petition that the defendants should have asserted promissory estoppel in the underlying case, the defendants did not file an amended or supplemental motion that addressed this claim or that reasserted the same defenses with reference to this claim. Farah did not need to specially except to the defendants' motions for summary judgment because they were not ambiguous. The motions unambiguously addressed only Farah's underlying tort and contract claims. We are not persuaded that *Judwin Properties* controls the outcome of this case.

 The defendants also argue the trial court did not err in granting summary judgment because Farah's filing of an amended petition did not create an issue of fact that would prevent the rendition of summary judgment. We agree that allegations in pleadings do not create fact issues. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979); *Alanis v. University of Tex. Health Science Ctr.,* 843 S.W.2d 779, 783 (Tex.App.—Houston [1st Dist.] 1992, writ denied). But, a defendant is not entitled to a summary judgment on a plaintiff's cause of action unless it conclusively proves the plaintiff cannot recover under its cause of action as pleaded in its petition.

*See Cathey,* 900 S.W.2d at 341; *Liggett,* 849 S.W.2d at 850. The defendants were not entitled to summary judgment on Farah's malpractice cause of action against them unless they proved as a matter of law Farah could not recover on any of the claims the firm asserted or should have asserted against the First City entities in the underlying litigation. The defendants have not done this with reference to Farah's allegation the firm should have added a claim for promissory estoppel in the underlying suit.

We sustain point of error one as it relates to Farah's assertion the defendants did not address his underlying claim for promissory estoppel in their motions for summary judgment.

## B.

### Tort Claims

In point of error two Farah argues the trial court erred in rendering summary judgment for the defendants because they did not establish as a matter of law Farah could not have recovered on his tort claims in the underlying suit. In point of error five Farah contends the trial court should not have rendered summary judgment for the defendants because they did not conclusively establish their affirmative defense of limitations as to his tort causes of action against the First City entities. In point of error four Farah alleges FCW's tortious acts can be imputed to FCD and FCB because FCW acted as an agent or alter-ego of FCD and FCB.

### Tort versus Contract

The defendants asserted in their motion for partial summary judgment Farah could not have recovered on his fraud and tort claims against the First City entities because those claims were based on the same facts that gave rise to Farah's breach of contract. To support this argument, the defendants submitted the following summary judgment evidence. Farah testified in deposition he never would have deposited money with FCD in 1963 had there not been an agreement to finance his home construction business. Farah testified his tort and fraud claims against FCD arose from the money he delivered to

FCD and the fact FCD obtained the money with the promise to finance his business. Farah also conceded his claims for fraud against FCD arose out of the verbal agreement he had with FCD. Farah testified both FCD and FCW breached their agreement with him in August 1984 when they cut off his credit, and that is when his damages started. In Farah's response to the defendants' motion, he asserted his fraud and tort claims were not contractual in nature even though they arose from the same facts as his claim for breach of contract.

Although the principles of tort and contract causes of action are well settled, it is often difficult to determine the type of action that is brought. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 617 (Tex.1986). To do so we look to the substance of the cause of action rather than the manner in which it was pleaded. *Id.* at 617–18; *River Consulting, Inc. v. Sullivan,* 848 S.W.2d 165, 169 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

Tort obligations are those imposed by law when a person breaches a duty which is independent from promises made between the parties to a contract; contractual obligations are those that result from an agreement between parties, which is breached. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991); *River Consulting, Inc.,* 848 S.W.2d at 169. If the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. *DeLanney,* 809 S.W.2d at 494; *River Consulting, Inc.,* 848 S.W.2d at 169. If the defendant's conduct would give rise to liability independently of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. *DeLanney,* 809 S.W.2d at 494.

In determining whether the plaintiff may recover on tort as well as contract, it is also helpful to examine the nature of the plaintiff's loss. *DeLanney,* 809 S.W.2d at 494; *River Consulting, Inc.,* 848 S.W.2d at 169. When the only loss or damage is the subject matter of the contract, the plaintiff's action is ordinarily on the contract. *DeLan-*

*ney,* 809 S.W.2d at 494; *Jim Walter Homes,* 711 S.W.2d at 618; *River Consulting, Inc.,* 848 S.W.2d at 169. When the loss or damage is not the subject of the contract, the plaintiff's action is one in tort. However, a plaintiff is not precluded from asserting a tort cause of action solely because his damages are analogous to the damages sought in a contractual claim. *See American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.,* 798 S.W.2d 274, 278 (Tex.1990) (commercial relations torts are not contractual even though they seek economic damages identical to a cause of action in contract).

The defendants' summary judgment evidence established Farah's negligence and fraud claims against the First City entities were based on their breach of a promise to finance Farah's construction business in exchange for his promise to deposit his relatives' money with FCD and FCW. We hold this evidence was sufficient to establish Farah's tort and fraud claims were contractual in nature because they alleged a breach of a duty imposed by an agreement rather than by operation of law.

Farah contends the Supreme Court did not intend for *DeLanney* to preclude a fraud cause of action simply because the plaintiff seeks to recover expectancy damages. *See Matthews v. AmWest Sav. Ass'n,* 825 S.W.2d 552, 554 (Tex.App.—Beaumont 1992, writ denied) (attempt to recover benefit of the bargain does not transform a fraud into a breach of contract); *but see Airborne Freight Corp. v. C.R. Lee Enter., Inc.,* 847 S.W.2d 289, 296 n. 4 (Tex.App.—El Paso 1992, writ denied) (disapproving statement in *Matthews* that, because fraud is a quasi-contractual action, law does not preclude recovery of expectancy damages). Regardless of the damages sought, we conclude Farah's fraud and negligent misrepresentation causes of action in the underlying suit were based upon the breach of a promise and therefore contractual in nature. *See Crim Truck & Tractor v. Navistar Int'l,* 823 S.W.2d 591, 597 (Tex. 1992) (law imposes duty to refrain from fraudulently inducing a person to enter a contract, but the failure to perform the terms of a contract is a breach of contract); *Airborne Freight,* 847 S.W.2d at 294, 298 (negli-

gent misrepresentation consists of misrepresentation of existing fact rather than promise of future conduct).

We agree with the defendants' assertion that Farah could not have recovered against the First City entities on any claims asserting negligence, fraud, or fraudulent or negligent misrepresentation.

### Breach of Fiduciary Duty

 In his response to the defendant's motion for partial summary judgment, Farah alleged the defendants did not address his claims in the underlying suit that FCD and FCW breached a fiduciary duty by denying his loan requests. The defendants responded in their supplemental motion by contending the First City entities owed no duty to Farah because a lender-borrower relationship does not give rise to a special relationship or fiduciary duty.

 Farah contends the defendants have not proven as a matter of law he could not have recovered in the underlying suit against the First City entities for breach of a special or fiduciary duty. Whether a confidential or fiduciary relationship exists is normally a question of fact to be decided by a jury. *Crim Truck & Tractor*, 823 S.W.2d at 594; *see also Taylor v. GWR Operating Co.*, 820 S.W.2d 908, 911 (Tex.App.—Houston [1st Dist.] 1991, writ denied). When the issue is one of no evidence or conclusive evidence, the issue is a question of law. *See Crim Truck & Tractor*, 823 S.W.2d at 594 (no evidence).

 Not every contractual relationship involves a duty of good faith and fair dealing. *See English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983); *Sanus/N.Y. Life Health Plan, Inc. v. Dube–Seybold–Sutherland Mgmt., Inc.*, 837 S.W.2d 191, 199 (Tex.App.—Houston [1st Dist.] 1992, no writ). Some contracts involve special relationships that may give rise to duties enforceable as torts. *DeLanney*, 809 S.W.2d at 494 n. 1; *Sanus*, 837 S.W.2d at 199. To impose a tort duty upon parties to a contract, the court must first find that a special relationship exists between them. *See Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex.1988); *Sanus*, 837 S.W.2d at 199. When special

confidence is placed in one who thereby obtains a resulting superiority of position and influence, a fiduciary or confidential relationship may result. *Sanus*, 837 S.W.2d at 199. The existence of a special duty in the context of a contract is not inconsistent. *Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex.1984); *Sanus*, 837 S.W.2d at 199. The special relationship may arise from the element of trust necessary to accomplish the goals of the contract, or because of an imbalance of bargaining power. *English*, 660 S.W.2d at 524 (concurring opinion); *Sanus*, 837 S.W.2d at 199.

 The relationship between a borrower and lender is usually neither a fiduciary relationship nor a special relationship. *Manufacturers Hanover Trust Co. v. Kingston Inv. Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ); *see also Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962) (debtor-creditor relationship involving personal loans from a bank officer did not create fiduciary relationship). Specifically, the relationship between a bank and its customers does not usually create a special or fiduciary relationship. *Manufacturers Hanover Trust*, 819 S.W.2d at 610. However, when a special relationship between a borrower and lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities. *Greater S.W. Office Park, Ltd. v. Texas Commerce Nat'l Bank*, 786 S.W.2d 386, 391 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

 Reviewing the summary judgment evidence in a light most favorable to Farah, we conclude the defendants conclusively proved the First City entities did not owe a special duty to Farah, and Farah produced no evidence to raise a fact issue regarding a confidential duty. Admittedly, the record indicates a long-standing relationship between Farah and the First City entities that extended beyond a normal debtor-creditor relationship. However, the fact a business relationship has been cordial and of long duration is not by itself evidence of a confidential relationship. *Crim Truck & Tractor*, 823 S.W.2d at 595. The fact one businessman trusts another and relies upon another to perform a contract does not rise

to a confidential relationship. *Id.* at 594. Subjective trust is not enough to transform arms-length dealing into a fiduciary relationship. *Id.* at 595; *Greater S.W. Office Park, Ltd.*, 786 S.W.2d at 391.

## Statute of Limitations

The defendants contended in their motions for partial summary judgment that Farah's tort-based claims against the First City entities were barred by the two-year statute of limitations when Farah retained the firm to represent him in the underlying suit, and the firm could not have committed malpractice. The defendants specifically asserted Farah's claim against the First City entities for defamation was barred by a one-year statute of limitations, and his claim for tortious interference with contractual relations was barred by a two-year statute of limitations. The defendants also claimed Farah's fraud claim against FCD and FCB and his breach of fiduciary duty causes of action were barred by limitations. Since we have already concluded for other reasons the defendants were entitled to summary judgment on Farah's fraud and breach of fiduciary duty claims, we only address the defendants' limitations argument with reference to Farah's causes of action for defamation and tortious interference with contractual relations.

Farah responded to the defendants' motion for partial summary judgment by contending many of his tort causes of action in the underlying suit were not barred by limitations. Specifically, Farah contended in his second amended petition he did not discover the alleged defamation in this case until October 1988 although the defamation occurred in August 1984. In his response to the defendant's motion for partial summary judgment, Farah applied the discovery rule and contended the statute of limitations on his defamation cause of action did not begin to run until October 1988, which was after Farah retained the firm to represent him in the underlying suit. Farah added the alleged defamation also constituted tortious interference with contract and a breach of fiduciary duty, and these causes of action were therefore also not barred by limitations.

To support the allegation a defamation cause of action would not begin run until October 1988, Farah stated in his affidavit he attended a deposition in October 1988 of Maurice Potts, senior vice-president of FCW. During the deposition, Potts testified Farah's loan request in August 1984 was not made because FCD warned FCW Farah had not paid a construction loan to FCD and was engaged in wild schemes and gimmicks because he could not sell his homes. Farah attached an excerpt of the Potts deposition containing this testimony to his affidavit.

■■■■ A defendant seeking summary judgment on the ground of limitations must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Rose v. Baker & Botts*, 816 S.W.2d 805, 809–10 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Therefore, the defendants had the burden of proving as a matter of law that, at the time Farah hired the firm in 1987, limitations on his defamation and tortious interference causes of action had already run pursuant to the discovery rule. *See Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976); *Johnson v. Abbey*, 737 S.W.2d 68, 69–70 (Tex.App.—Houston [14th Dist.] 1987, no writ) (discovery rule applies to defamation that is not of public knowledge, as in a false credit report).

The defendants did not produce any summary judgment evidence to refute Farah's evidence he did not learn of the defamation until October 1988. Assuming Farah's evidence to be true, the statute of limitations on his defamation cause of action did not run until October 1989. We conclude the defendants did not prove the First City entities were entitled summary judgment based on limitations had the firm filed a cause of action in the underlying suit for defamation or tortious interference with contractual relations.

We hold the defendants have proven as a matter of law Farah could not recover in the underlying suit on his causes of action for negligence, fraud, breach of fiduciary duty,

and fraudulent or negligent misrepresentation. However, we hold the defendants have not conclusively proven Farah could not recover in the underlying suit on his causes of action for defamation or tortious interference with contractual relations.

We sustain points of error one and five in part and overrule them in part. We do not address point of error four in reference to Farah's tort claims because we do not find it dispositive.

## C.

### Contract Claims

Farah alleges in point of error three the trial court erred in rendering summary judgment for the defendants because they did not establish as a matter of law Farah could not recover on his contract claims. He contends in point of error five the defendants did not establish their affirmative defenses on his contract claims as a matter of law. Specifically, Farah asserts in point of error four the defendants did not conclusively disprove his claims that FCW's breach in August 1984 can be imputed to FCD for limitations purposes through an agency or "alter ego" theory.

The defendants asserted various reasons in their motions for summary judgment that Farah could not recover on his contractual causes of action in the underlying litigation. First, the defendants asserted that, at the time Farah hired the firm in June 1987, his contract claims against FCB and FCD were barred by a four-year statute of limitations that began running when FCD told Farah in December 1982 it would not approve loans for less than $1,000,000. The defendants also asserted Farah could not have recovered against any of the First City entities in the underlying suit because his agreements with FCD and FCW were indefinite and unenforceable, violated the statute of frauds, and were terminable at will.

To support their contentions, the defendants presented summary judgment evidence of FCD's decision in December 1982 to cut off Farah's line of credit. The defendants also submitted Farah's deposition testimony in which he described the terms of the oral agreement at issue and testified it was entered for the purpose of facilitating real estate loans for Farah's business.

Farah responded to the defendants' contentions by asserting the statute of limitations did not begin to run against FCD and FCB until August 1984, when FCW refused to loan Farah more money. Farah contended FCW's actions could be imputed to FCD under an agency or "alter ego" theory. Alternatively, Farah asserted FCD was responsible for FCW's actions because the original agreement between FCD and Farah, although modified by FCW's substitute performance, was still in effect.

Farah also contended his agreements with FCD and FCW were enforceable contracts. Specifically, he argued any missing terms in his agreement with FCD or FCW could be determined by reference to course of performance, especially since the First City entities had already received the benefits of Farah's deposits. Farah asserted the defendants had cited no evidence that real estate security was a condition or requirement for loans by FCD or FCW to Farah, and therefore, the statute of frauds was inapplicable. Finally, Farah argued the loan agreements were not terminable at will because a contract that contemplates the expenditure or investment of funds by one of the parties may not be terminated at will, but will continue for a reasonable period of time.

### Statute of Limitations

■ We first consider whether the statute of limitations barred Farah's contract claims against FCD when he hired the firm in June 1987. If Farah's cause of action against FCD accrued in December 1982 as the defendants allege, then it was barred by the four-year statute of limitations when Farah hired the firm. However, if the claim accrued in August 1984 as Farah alleges, then it was not barred by limitations when Farah hired the firm.

■ A party to a contract cannot avoid liability by delegating his obligation to perform to another person. *University of Texas Medical Branch v. Allan*, 777 S.W.2d 450, 453 (Tex.App.—Houston [14th Dist.] 1989, no writ); RESTATEMENT (SECOND) OF CONTRACTS

§ 318(3) cmt. d (1981). Farah alleged, and the summary judgment evidence shows, that FCD delegated its duties under the agreement with Farah to FCW. Herring, executive vice-president of FCD, told Farah to keep substantial deposits at FCD, but FCW would assume FCD's obligation to perform. This arrangement continued until August 1984, when FCW refused Farah's loan request. We hold the defendants did not conclusively prove Farah's cause of action against FCD accrued in December 1982, or that Farah's contract claims against FCD were barred by the four-year statute of limitations when Farah hired the firm.

### Specificity and Indefiniteness

■■■■ We now address whether Farah's agreements with FCD and FCW were unenforceable because they were vague or terminable at will. Whether the parties intended to enter a binding contract or merely an unenforceable agreement to make a contract in the future is ordinarily a question of fact that will preclude summary judgment. *See Scott v. Ingle Bros. Pac., Inc.,* 489 S.W.2d 554, 554–56 (Tex.1972) (trial court erroneously decided issue of parties' intent as a matter of law instead of submitting it to jury); *Houston Chronicle Pub. Co. v. McNair Trucklease, Inc.,* 519 S.W.2d 924, 928 (Tex.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (in non-jury trial, court made fact finding regarding intention of parties). Whether a particular agreement constitutes a valid contract is generally question of law. *Chapman v. Mitsui Eng'g. & Shipbldg. Co.,* 781 S.W.2d 312, 316 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

As noted, the summary judgment evidence demonstrated the parties agreed that FCD, and later FCW, would provide financing for Farah's business so long as Farah maintained accounts with FCD and complied with the terms and conditions of the individual loan agreements. Farah testified FCD obligated itself to make any future loans in response to a reasonable request.

■■■■ A contract is not legally binding unless it is definite enough in its terms so a court can understand what the promisor undertook. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992). Where an essential term of an agreement is open for future negotiations, there is no binding contract. *Id.* Each contract should be considered separately to determine its essential terms. *Id.* In a contract to loan money, the material terms are generally the amount to be loaned, the maturity date of the loan, the interest rate, and the repayment terms. *Id.*

Viewing the summary judgment evidence in a light most favorable to Farah, we conclude his agreement with FCD and FCW was too indefinite to be independently enforced because it did not specify any of the material terms inherent in the individual contracts to lend money. We find this case analogous to *Pine v. Gibraltar Sav. Ass'n,* 519 S.W.2d 238, 243 (Tex.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) In *Pine,* a bank agreed to lend Pine whatever amount of money he needed at any time within three years to construct houses, and the loans were to be made according to prevailing market rates and industry standards. *Id.* The court held this agreement was an unenforceable agreement to agree, partly because there was no agreement as to the total amount to be loaned, when and how the interest was to be paid, when and how the principal was to be paid, or when the loans would mature. *Id.* at 244.

We also conclude the contracts between Farah and FCD and FCW were terminable at will because they did not specify a time of duration. A contract that contemplates continuing performances and is indefinite in duration can be terminated at the will of either party. *Clear Lake City Water Auth. v. Clear Lake Util. Co.,* 549 S.W.2d 385, 390 (Tex. 1977).

### Statute of Frauds

■■■■ We finally consider whether the defendants conclusively proved Farah's contract claims against the First City entities were barred by the statute of frauds. As noted, the summary judgment evidence indicates Farah entered an oral agreement with FCD in 1963 to secure a line of credit for real estate loans that would finance Farah's

home construction business, and FCW agreed in 1982 to lend Farah money according to the same terms.

Whether a contract falls within the statute of frauds is a question of law. *Bratcher v. Dozier,* 346 S.W.2d 795, 796 (Tex. 1961); *Barbouti v. Munden,* 866 S.W.2d 288, 294 (Tex.App.—Houston [14th Dist.] 1993, no writ). A real estate loan commitment is subject to the statute of frauds because it is secured by the title to real estate. *Edward Scharf Assoc., Inc. v. Skiba,* 538 S.W.2d 501, 502 (Tex.App.—Waco 1976, no writ); TEX. BUS. & COM.CODE § 26.01(b)(4) (1987). To be enforceable as a contract, an agreement that falls within the statute of frauds must be: (1) in writing or summarized in a written memorandum; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. TEX.BUS. & COM.CODE § 26.01(a) (1987). Because Farah's contracts with the First City entities fell within the statute of frauds and were not in writing, they were not enforceable.

We hold that, although a question of fact exists as to whether Farah's contract claims against the First City entities were barred by limitations, the claims were nevertheless unenforceable because of indefiniteness and the statute of frauds.

We sustain point of error four as it relates to Farah's contract claim, and point of error five regarding the limitations claim. However, we overrule point of error three regarding the general allegation that the trial court erred in rendering summary judgment for the defendants because they did not establish as a matter of law Farah could not recover on his contract claims.

### D.

### Statute of Limitations in Present Suit

Farah contends in point of error five the trial court erred in rendering summary judgment on the basis Farah did not timely add Boswell and Link in his second amended petition. The defendants moved for summary judgment on Farah's claims against Boswell and Link on the basis of the two-year statute of limitations, and Farah responded limitations did not apply because he added allegations against Boswell and Link within two years after all appeals in the underlying suit were exhausted.

The summary judgment evidence demonstrates Farah learned in August 1991 his case had been dismissed for want of prosecution because of errors by the firm. However, the Supreme Court did not dismiss Farah's appeal for want of jurisdiction until November 8, 1991. Farah added Boswell and Link in his first amended petition on November 5, 1993, which was more than two years after he learned his case had been dismissed for want of prosecution but less than two years after the Supreme Court dismissed Farah's appeal for want of jurisdiction. We must determine when Farah's cause of action accrued.

The Supreme Court has held that, when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted. *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 157 (Tex.1991). The policy of the rule is a plaintiff in a malpractice suit should not be placed in the position of having to take inconsistent positions in the underlying suit and in the malpractice suit. *Id.*

The defendants contend Farah's malpractice cause of action was not tolled and *Hughes* does not apply to this case because the firm informed Farah of its errors before his appeals in the underlying suit were exhausted. We disagree. To apply the rule the defendants suggest would circumvent the policy of the rule. We hold Farah's claims against Boswell and Link were not barred by limitations because they were added as parties to the lawsuit within two years of the date the appeals on the underlying claim were exhausted. Further, we note the summary judgment evidence raises a fact issue as to when the firm effectively gave Farah notice of its errors. Farah stated in his affidavit Link told him to expect a letter stating when limitations would commence on his malpractice claims, and Farah did not receive such a letter.

We sustain point of error five insofar as it relates to Farah's contention his claims against Boswell and Link were not barred by limitations.

We reverse the judgment of the trial court and remand this malpractice case for further proceedings against all defendants related to the underlying claims of defamation, tortious interference with contract, and promissory estoppel.

HUTSON–DUNN, J., concurring and dissenting.

HUTSON–DUNN, Justice, concurring and dissenting.

I dissent from the portion of the majority opinion that holds the defendants' motions for summary judgment were not broad enough to address Farah's allegation that the defendants should have asserted promissory estoppel in the underlying suit. I believe the defendants' motions were broad enough to address this claim. I would overrule point of error one in its entirety. Further, I believe the defendants have proved as a matter of law that Farah could not recover on his underlying claim for promissory estoppel. I would affirm the judgment of the trial court with reference to this claim.

### Overbreadth of Judgment

The defendants argue in their brief that Farah's underlying claim for promissory estoppel was barred by both the statute limitations and the statute of frauds. The majority does not consider the defendants' arguments because it holds their motions for summary judgment were not broad enough to address Farah's underlying cause of action for promissory estoppel. I disagree. I believe the defendants' motions for summary judgment contemplated all causes of action set forth in Farah's amended petitions.

The defendants filed their motion for summary judgment, and then Farah filed his third amended petition. The defendants did not object when Farah filed his third amended petition. When the record provides no basis to conclude the amended petition was *not* considered by the trial court, we presume the court considered the new pleadings.

*Johnson v. Rollen,* 818 S.W.2d 180, 182–83 (Tex.App.—Houston [1st Dist.] 1991, no writ). Therefore, the inquiry becomes whether the summary judgment was broad enough to cover the new claim(s) in the amended pleadings. *See Yancy v. City of Tyler,* 836 S.W.2d 337, 341 (Tex.App.—Tyler 1992, writ denied) (motion for summary judgment must be analyzed in light of pleadings to ensure motion defeats every cause of action raised in petition.)

The defendants' supplement to their motion for summary judgment specifically states that "summary judgment is appropriate insofar as Farah's legal malpractice claims in this case are based on the loss of *any alleged claims* against [FCD] and [FCB] in the underlying case." (Emphasis added.) The defendants also moved "for *complete summary judgment* ... on the basis that Farah's *claims* against the First City entities in the underlying lawsuit were barred as a matter of law." (Emphasis added.) The defendants' motions on their face address all claims that Farah alleged in the underlying suit. Therefore, in my opinion, the defendants' motions for summary judgment were broad enough to address Farah's underlying claim for promissory estoppel. Accordingly, I proceed to consider whether the defendants have proved as a matter of law that limitations or the statute of frauds barred Farah's potential claim for promissory estoppel in the underlying suit at the time he hired the defendants.

### Statute of Limitations

The statute of limitations for a promissory estoppel claim is the same as the statute of limitations for a contract claim, *i.e.,* four years. *Eagle Properties, Ltd. v. Scharbauer,* 816 S.W.2d 559, 562 (Tex.App.—El Paso 1991, writ denied). The majority opinion holds the defendants did not conclusively prove Farah's contract causes of action in the underlying suit were barred by the four-year statute of limitations when Farah hired the firm. For the same reasons stated by the majority, I would hold the defendants did not prove as a matter of law that Farah's potential promissory estoppel claim in the underlying suit was barred by the four-year statute

of limitations when Farah hired the defendants. I would not affirm summary judgment on Farah's underlying promissory estoppel claim on this ground.

### Statute of Frauds

When a movant proves its entitlement to summary judgment based on the statute of frauds, the nonmovant may defeat the motion by raising a fact issue on each element of his promissory estoppel defense. *"Moore" Burger, Inc., v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972); *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 959 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.). To prevent the rendition of summary judgment on an otherwise valid statute of frauds defense, the nonmovant must produce some evidence of the following:

(1) the movant made an oral promise to sign a written agreement that satisfied the statute, and the nonmovant foreseeably relied on the promise to his detriment; or

(2) the movant orally represented the statute of frauds had been satisfied, and the nonmovant relied to his detriment on the misrepresentation.

*"Moore" Burger, Inc.*, 492 S.W.2d at 936–37; *Leach*, 892 S.W.2d at 959.

The majority holds the defendants conclusively proved Farah's underlying contract claims against the First City entities were barred by the statute of frauds. I agree with this conclusion. For the same reasons, I would also hold the defendants conclusively proved Farah's underlying promissory estoppel claim against the First City entities was barred by the statute of frauds.

Farah did not present any summary judgment evidence to raise a fact issue on his underlying promissory estoppel claim. All of the summary judgment evidence in the record establishes that the promises to Farah were oral. There is no summary judgment evidence the First City entities promised Farah to sign a written agreement that satisfied the statute of frauds. There is also no summary judgment evidence the First City entities misrepresented to Farah that their oral agreement satisfied the statute of frauds.

I would affirm the judgment of the trial court on Farah's potential claim for promissory estoppel in the underlying suit based on the statute of frauds.