Opinion issued May 9, 2002


 














In The

Court of Appeals

For The

First District of Texas






NO. 01-00-00942-CV

____________


THE STATE OF TEXAS, Appellant


V.


JAPAGE PARTNERSHIP, A TEXAS GENERAL PARTNERSHIP, Appellee






On Appeal from County Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 659,298






O P I N I O N

 The State brings this appeal from a judgment in a condemnation proceeding. 
The trial court granted a partial summary judgment in favor of the appellee, Japage
Partnership, on the merits and denied the State's motion for partial summary
judgment. Both motions addressed the issue of Japage's ownership interest in the
appurtenant parking and access rights in its condemned property. The case was then
submitted to a jury on the issue of the value of the property.

 In two issues, the State argues the trial court erred in granting Japage's second
motion for partial summary judgment and in denying the State's motion for partial
summary judgment. We affirm.

Factual and Procedural Background


 On behalf of the Texas Department of Transportation, the State filed a petition
to condemn and acquire fee simple title to the surface rights of several acres of real
property, located adjacent to Willowbrook Mall, so as to widen a section of Highway
249.

 Japage was the title owner of a 20,301 square foot section of the condemned
property, which consisted of a building pad site of a restaurant operated by TGI
Friday's, Inc. Japage purchased the property in 1992 from the Resolution Trust
Corporation (RTC) for $950,000. The special commissioners appointed by the trial
court in the condemnation proceeding found the value of this section of the
condemned property to be $2,448,213.75, and the State deposited that amount into
the registry of the court, pending a determination of the extent and value of Japage's
ownership interest in the property.

 The State's petition for condemnation named Japage and other entities as
parties with potential ownership interests in the property, (1) including the property's
lessee, TGI Friday's. (2) Japage answered and appeared, and asserted that, in addition
to its ownership interest in the building pad site, it had subsequently acquired
appurtenant rights of parking and access in and through the surrounding property.

 The State asserted in its motion for partial summary judgment that no issue of
material fact existed regarding Japage's lack of any ownership interest in appurtenant
easement and access rights to the property. In its second motion for partial summary
judgment, Japage asserted that no issue of material fact existed regarding its clear
ownership of appurtenant parking and access rights to the property. (3) The trial court
denied the State's motion and granted Japage's motion, holding that Japage "owned
rights appurtenant to its property, as more particularly described in the June 14, 1985
Reciprocal Easement and Operating Agreement." 

 The case was submitted to a jury on the issues of (1) the fair market value of
Japage's condemned property and (2) the amount of damages, if any, to the remainder
of Japage's property as a result of the condemnation. The jury found the fair market
value of the property, as of November 30, 1994, to be $1,900,000. As to the
remainder of Japage's property, it found no damage resulting from the condemnation.

 Before the entry of judgment, Japage, based on the evidence presented, moved
for a judgment notwithstanding the verdict, requesting the trial court to disregard the
jury's finding of no damages as to the remainder of its property. Remarkably, experts
for the State testified the value of the damage to the remainder varied between
$163,120 and $978,527. Japage's expert testified the value of the damage to the
remainder was only $94,350. The trial court granted Japage's motion, rendered
judgment that the jury finding regarding the value of the damages to the remainder
was not supported by the evidence, and awarded Japage an additional $94,350 as
compensation for the damages to the remainder of its property. The trial court also
rendered judgment for Japage for $1,900,000, based on the jury's determination of
the fair market value of the condemned property, as well as interest and taxable court
costs.

 The State filed a motion for new trial, which was overruled by operation of law.

Partial Summary Judgments


 A party moving for summary judgment has the burden of proving there is no
genuine issue of material fact and the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt., 690 S.W.2d 546, 548 (Tex.
1985); Farah v. Mafrige & Kormanik, 927 S.W.2d 663, 670 (Tex. App.--Houston
[1st Dist.] 1996, no writ). When deciding whether there is a disputed material fact
issue precluding summary judgment, evidence favorable to the non-movant will be
taken as true. Nixon, 690 S.W.2d. at 548-49. Every reasonable inference must be
indulged in favor of the non-movant and any doubts resolved in its favor. Nixon, 690
S.W.2d at 548-49. When a defendant moves for summary judgment, it must either:
(1) disprove at least one element of the plaintiff's cause of action; or (2) plead and
conclusively establish each essential element of its affirmative defense, thereby
rebutting the plaintiff's cause of action. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995); Farah, 927 S.W.2d at 670.

 When, as here, both parties move for summary judgment, the appealing party
may challenge the denial of its own motion as well as the judgment in favor of the
prevailing party. CU Lloyd's v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998). Each
party must carry its own burden, however, both as movant and in response to the
other party's motion, as nonmovant. Id.; James v. Hitchcock Indep. Sch. Dist., 742
S.W.2d 701, 703 (Tex. App.--Houston [1st Dist.] 1987, writ denied).

State's Motion for Partial Summary Judgment

 In its second issue, the State contends the trial court erred in denying its motion
for partial summary judgment. In its motion, the State relied solely on two pieces of
summary judgment evidence: (1) excerpts from the October 21, 1997 deposition
testimony of George M. Lee, the managing partner of Japage, and (2) a June 14, 1985
Reciprocal Easement and Operating Agreement ("REOA") between James L.
Maxwell and Albert Peyton Cottrell, individually, and Willowbrook Phase II, a Texas
general partnership. (4)

Inclusion of Property in REOA

 The State argued in its motion that, as a matter of law, Japage held no
ownership interest in any appurtenant rights to the property in question because the
tract at issue was specifically excluded from the REOA's descriptions of the property
affected by that agreement. On appeal, at oral argument, the State conceded this point
and now does not dispute that the descriptions of property affected by the REOA
include the property at issue. Based on our review of the REOA, we agree.

 The REOA was executed by and between Maxwell and Cottrell, individually (5)
and as general partners of Willowbrook Phase II. That agreement reads, in part, as
follows:

 WHEREAS, Maxwell/Cottrell and Willowbrook mutually desire to
expressly set forth herein certain agreements made between themselves
concerning, among other matters, their mutual granting of certain
reciprocal private cross-access and parking easements, . . . and . . .
desire to establish, create, dedicate and grant certain mutual, reciprocal
and non-exclusive private easements for pedestrian and vehicular
access, ingress and egress over and across certain portions of Parcels
"A" and "B" for the enjoyment, use and benefit of the Owner (6) . . . hereby
expressly agree that Parcel "A" and Parcel "B" shall be hereafter
developed, held, sold, and conveyed subject to the following easements,
restrictions, rights-of-way, covenants, and conditions, . . . which shall
run with Parcel "A" and Parcel "B", and shall be binding on all parties
hereafter having any right, title, or interest in or to the Property, or any
part thereof, as well as their respective heirs, executors, administrators,
successors, and assigns, and which easements, restrictions, covenants,
and conditions shall inure to the benefit of each Owner thereof . . . .


(Emphasis added.)

 If a written instrument is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous and the court will construe
the contract as a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). 
By its provisions, the REOA granted all current and future owners of parcels "A" and
"B" reciprocal and non-exclusive easements appurtenant to the property, including
access "over, through, and across" and use of the parking areas and roadways on both
parcels. These easements were created "for the use and benefit" of the respective
owners and their "tenants, customers, concessionaires, agents, invitees, officers,
employees, and licensees."

 Further, the effect of the REOA was to bind future owners of the described
properties to the terms of the agreement. Section 9.04 of the REOA, entitled
"Binding Effect," reads, in part, as follows:

 The covenants, servitudes, premises and agreements contained herein
are to run with the land and shall be binding on, benefit and inure to
each Owner and its respective heirs, personal representatives, legal
representatives, successors and assigns. Any conveyance, transfer, sale,
assignment, lease or sublease . . . made by any Owner or any interest in
their respective property or improvement will and hereby is deemed to
incorporate by reference the provisions of this Agreement, and the
obligations of this Agreement from and after the date of transfer shall be
binding on such transfers.


 The property described in the REOA as "Parcel 'A'" and "Parcel 'B'" is
specifically described in the body of the agreement and in several exhibits attached
to the agreement. The property referred to as "Parcel 'A'" is comprised of six distinct
tracts of property. One of these tracts is described as 1.1985 acres, and its description
specifically excludes the 20,301 square foot parcel at issue. However, as argued by
Japage, and as now conceded by the State, the description of another tract within
"Parcel 'A'," comprising 15.485 acres, specifically includes the 20,301 square foot
parcel within it. Therefore, by its terms, the REOA applied to the property, and the
State's argument that the REOA excluded this property fails.

Legal Effect of Easements in REOA

 In addition, the State contends the language in the REOA purporting to create
reciprocal easements between the properties described in that agreement was without
legal effect because there was no separation of ownership of those properties. The
State relies on the fact that Maxwell and Cottrell jointly owned all the property
described in the REOA. We note, initially, that the State presents this argument for
the first time on appeal and did not present this argument to the trial court either in
its motion for partial summary judgment or in its response to Japage's second motion
for partial summary judgment. However, we will address it on the merits.

 In support of its assertion that no easement between parcels of property can
arise under a unity of ownership, the State relies on Howell v. Estes, 71 Tex. 690, 12
S.W. 62, 63 (1888). Howell involved two houses, each two stories high, which
shared a common partition wall and were located on adjoining lots. Id. The upper
rooms of both houses were reached by a common stairway located in one of the
buildings. Id. The houses were originally owned by Howell's father, who, in his will,
devised one of the buildings to Howell and the other to his daughter. Id. The
successor-in-interest to the daughter subsequently refused Howell access to the
stairway. Id. The Texas Supreme Court, presented with the question of whether the
use of the stairway passed to Howell, observed as follows:

 The principle is elementary that, to constitute an easement, the dominant
and servient estates must be held by different owners; and when the
owner of an estate enjoys an easement over another, and acquires title
to the latter, the easement is thereby extinguished.


12 S.W. at 62. However, after noting the general rule, the court held the use of the
stairway passed to Howell, reasoning, in part, as follows:

 We think the weight of authority sustains the proposition that if an
improvement constructed over, under, or upon one parcel of land for the
convenient use and enjoyment of another contiguous parcel by the
owner of both be open and usable and permanent in its character . . . and
the owner alienates the latter, the use of such improvement will pass as
an easement . . . .


Id. (emphasis added). Therefore, Howell supports the proposition that an "easement"
between two parcels of property may be created under a unity of ownership, but will
not take legal effect until either of the parcels is sold to a separate owner. Thus, the
reciprocal easements created by the REOA between the parcels described in that
agreement took legal effect when either of the parcels was sold by Maxwell and
Cottrell.

 More recent cases support this conclusion. In Preston Del Norte Villas Ass'n
v. Pepper Mill Apartments, Ltd., 579 S.W.2d 267, 270 (Tex. App.--Dallas 1979, writ
ref'd n.r.e.), the court held that an easement incorporated in a property declaration
filed before the property was separated into two tracts was nonetheless reserved by
the original owner. The court reasoned, in part, as follows:

 [D]efendants argue that for an easement to exist there must be dominant
and servient estates held by different owners, and here there was no
separation of ownership, since Preston Centennial owned the entire
twenty-one acres at the time of the declaration. We do not agree. Even
though there may have been no separation of ownership at the time of
the declaration, Preston Centennial subsequently conveyed title to the
condominiums to defendants, together with title to undivided interests
in the common areas, subject to the provisions of the declaration. 
Consequently, when defendants took title to their properties, a
separation of ownership occurred, and defendants' titles became subject
to the reserved easement.


Preston Del Norte, 579 S.W.2d at 270 (emphasis added).

 We conclude the reciprocal easements created between the parcels described
in the REOA, while not effective as between Maxwell and Cottrell's unity of
ownership, took legal effect immediately upon the partition of the property and, thus,
Japage could have reasonably relied upon the existence of such easements when it
purchased the property at issue.


Testimony of George Lee

 In its motion for partial summary judgment, the State also asserted that Lee, in
his deposition testimony, denied the existence of any "writing which would create or
relate to any asserted claim to any rights outside the subject 20,301 square foot tract." 
We disagree.

 It is clear from the record that Lee did not deny the existence of any documents
creating appurtenant rights in the 20,301 square foot tract. Rather, in response to
questioning regarding Japage's production of documents responsive to a subpoena
duces tecum, Lee merely denied he had any such documents in his possession. Even
assuming Lee had been qualified as an expert witness on such matters, which he was
not, his statements do not amount to a legal conclusion regarding the effect of
documents not in his possession. Tex. R. Evid. 701. Thus, the State's argument on
this issue also fails.

 Because the arguments and summary judgment evidence presented to the trial
court by the State do not establish, as a matter of law, that Japage holds no ownership
interest in the property at issue, we hold the trial court did not commit error in
denying the State's motion for partial summary judgment.

 We overrule the State's second issue.


Japage's Second Motion for Partial Summary Judgment

 In its first issue, the State contends the trial court erred in granting the second
motion for partial summary judgment filed by Japage. In its motion, Japage asserted,
as a matter of law, that, in addition to owning the 20,301 square foot parcel at issue,
Japage also owned rights of access and parking appurtenant to the property.

 As set forth above, the REOA established reciprocal rights of access and
parking in the parcel at issue and other surrounding tracts. In 1986, Maxwell and
Cottrell pledged certain property, including the parcel at issue, to Hardin Savings and
Loan Association to secure a loan. The RTC subsequently acquired the property. In
1992, Japage purchased the 20,301 square foot parcel from the RTC. 

 The sale of the property from the RTC to Japage was memorialized in a
"Special Warranty Deed with Vendor's Lien," which reads, in part, as follows:

 Grantor hereby GRANTS, SELLS, CONVEYS, ASSIGNS and
DELIVERS to the Grantee, without covenant or warranty express or
implied . . . all right, title and interest, if any, of the Grantor, as owner
of the Property . . . in and to . . . (iv) any easements, rights of way, rights
of ingress and egress or other interests in, on, or to, any land . . .
abutting, adjoining or otherwise appurtenant to the Property, as well as
all other rights, privileges and appurtenances owned by the Grantor
hereunder conveyed . . . .


(Emphasis added.) The warranty deed also included an attached list of "Permitted
Encumbrances" affecting the property. That list specifically enumerated the lease
held by TGI Friday's and the "[t]erms, conditions, and stipulations" contained in the
REOA. Thus, when Japage purchased the property from the RTC, it succeeded to
RTC's ownership interest in all appurtenant rights in the property, including those
spelled out in the REOA. Based on the summary judgment evidence presented to the
trial court, we hold Japage established, as a matter of law, its ownership interest in the
appurtenant rights of parking and access to its property.

 We overrule the State's first issue on appeal.

Conclusion


 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings.


Publish. Tex. R. App. P. 47.

1. The other entities named were Musa Dakri (trustee and easement holder),
Duree B. Jorgensen a/k/a Duree B. Trautwein (easement holder), 1994 Land
Fund II-Dallas 1, L.P. (easement holder), Willowbrook Ventures, Inc.
(easement holder), Galwan Texas, Inc. (easement holder), Sturgis Realty, Ltd.
(easement holder), Pacifica West Financial Corporation (easement holder),
Texas Capital Bank, N.A. (lienholder), and Coastal Banc SSB, as successor in
interest to Texas Capital Bank, N.A. (lienholder). With the exception of
Coastal Banc, which filed a disclaimer of interest, none of these parties
appeared. Harris County and its related taxing entities also intervened and 
recovered ad valorem property taxes in the amount of $20,020.69.
2. The State ultimately settled with TGI Friday's for $1,662,575.34, including
prejudgment interest, as the fair market value of its condemned leasehold.
3. The trial court denied Japage's first motion for partial summary judgment on
this issue.
4. Maxwell and Cottrell were the general partners of Willowbrook Phase II.
5. At the time the REOA was executed, Maxwell and Cottrell individually owned
the 20,301 square foot parcel, although they executed a January 10, 1985 lease
agreement with TGI Fridays under the name "Maxwell Cottrell Development."
6. "Owner" is defined in the REOA as "the record title holder or holders of the
real property and improvements comprising either Parcel 'A' or Parcel 'B'."