Richard Eugene BRUCE and Michael James Vargas, Appellants,

v.

K.K.B., INC. d/b/a Seafood & Spaghetti Works, Appellee.

No. 13–99–455–CV.

Court of Appeals of Texas, Corpus Christi.

June 7, 2001.

Rehearing Overruled Aug. 23, 2001.

Nadine Melissa Nieto, Law Offices of Ronald A. Ramos, San Antonio, for Appellants.

Alex M. Miller, Isidro O. Castanon, Allen, Stein & Durbin, Palacios, for Appellee.

Before Justices DORSEY, RODRIGUEZ, and SEERDEN.[1]

## OPINION

Opinion by Justice RODRIGUEZ.

In this dram shop liability case, Richard Bruce and Michael Vargas, appellants, appeal from the granting of summary judgment in favor of K.K.B. Inc., d/b/a Seafood & Spaghetti Works (Spaghetti Works). We reverse and remand.

Margie Jean Diosdado and Christine Villarreal went to an establishment known as the Quarterdeck on the afternoon of October 4, 1996, where they drank wine. From there, they went to Spaghetti Works, a restaurant and bar. According to Villarreal, they sat at a bar in Spaghetti Works and ordered a bottle of wine from a female bartender. They finished the bottle of wine, with each drinking roughly three glasses. They then went into the restaurant area and ordered another bottle of wine and dinner. They drank about a third of the bottle of wine, with each drinking approximately one glass.

Lara Carney, a bartender at Spaghetti Works, stated in a deposition that Diosdado and Villarreal arrived around 4:30 or 4:40 p.m. They came up to her at the bar and ordered a bottle of wine. They did not appear intoxicated, and, in fact, Diosdado was able to point to what she wanted on the wine list without any difficulty. Carney handed them a bottle of wine and two glasses, and they had no problems holding the bottle or walking away with the glasses. Diosdado and Villarreal sat down at a table and stayed in the lounge for about thirty minutes. They did not display any type of behavior that would lead Carney to believe they were intoxicated. A waiter came and sat them in the restaurant area around 5:00 p.m.

Jason Livengood, a waiter at Spaghetti Works, testified in his deposition that he saw Diosdado and Villarreal in the bar area and he did not observe anything that would lead him to conclude they were intoxicated. Approximately forty to forty-five minutes after they arrived, Livengood escorted them into the restaurant area. Diosdado and Villarreal carried wine and glasses from the bar to the table. They ordered dinner and made a trip or two to the salad bar. They ordered a bottle of wine with their dinner. Livengood did not detect any signs that they were intoxicated.

Thereafter, Diosdado and Villarreal left Spaghetti Works.[2] Villarreal got into her

---

1. Retired Chief Justice Robert J. Seerden assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex Gov't Code Ann. § 74.003 (Vernon 1998).

2. The record does not clearly establish the time Diosdado and Villarreal left Spaghetti Works. In their briefs, the parties agree they left at approximately 6:15 p.m. In support of this assertion, appellants cite to a receipt that indicates the purchase of pasta, crab cakes, and Chardonnay. Written on the receipt is "Food and Spaghetti Works," with the date, "10/04/96," and the time, which is illegible. Appellants also cite to an expert report of James C. Garriot, in which he states that his opinion is based on assumed facts, including that Diosdado and Villarreal left the second establishment around 6:15 p.m. Spaghetti Works cites to the depositions of James Liven-

car, but was unable to find her keys. She attempted to start the car with coins, and then passed out. Some time later, an employee approached Villarreal's vehicle and took her inside the restaurant. Another employee drove Villarreal home. While driving on a highway towards Villarreal's home, they came upon an automobile accident involving Diosdado. Villarreal testified that when they arrived at the scene of the accident, she felt that it was Diosdado. When asked if she felt that way because Diosdado had been drinking too much, Villarreal replied, "It was just a feeling that I had."

Diosdado had apparently been driving down a highway at around 6:35 p.m. when she lost control of her vehicle and collided with vehicles driven by Vargas and Bruce. Diosdado was killed in the accident and Vargas and Bruce allegedly suffered injuries. According to a police report, Diosdado's blood alcohol level was .48 g/dL. However, according to Dr. James C. Garriot, who reviewed a laboratory report, Diosdado's vitreous humor level indicated a blood alcohol content of .228 g/dL, and given the circumstances, this test was a more reliable indicator of the alcohol content.

Villarreal testified that she started feeling the effects of the alcohol during the last five minutes while at Spaghetti Works. Villarreal stated that Diosdado was fine; and that during the conversation they had before Villarreal got into her car, Diosdado

did not exhibit any outward effects of intoxication.

Appellants brought suit against Spaghetti Works, the Quarterdeck, and the personal representative of Diosdado's estate. Appellants sued Spaghetti Works under section 2.02 of the Texas Alcoholic Beverage Code, alleging it did not refuse to serve alcoholic beverages to Margie Jean Diosdado even though it was apparent that she was obviously intoxicated to the extent that she presented a clear danger to herself and others. TEX. ALCO. BEV. CODE ANN. § 2.02 (Vernon 1995). Spaghetti Works filed both a no-evidence summary judgment motion, and a traditional summary judgment motion, arguing that it was not apparent to its employees at the time they served alcohol to Diosdado that she was obviously intoxicated to the extent that she was a danger to herself and others. Appellants responded to the motions with evidence of the police report from the accident, the depositions of employees Carney and Livengood, the deposition of Christine Villarreal; and an expert report by James C. Garriot.

■ Spaghetti Works lodged objections to the responses and the evidence.[3] Without specifying the ground or grounds relied on for the ruling, the trial court granted Spaghetti Work's motion for summary judgment. Thereafter, the court entered an order severing Spaghetti Works from the remaining defendants and the sum-

good and Lara Carney. Carney does not testify as to what time Diosdado and Villarreal left the premises. Livengood testified that they left sometime around 6:00 p.m.

3. Spaghetti Works urges that appellants' summary judgment evidence was not properly before the trial court because it was not timely filed. As Spaghetti Works notes, it filed objections to appellant's responses and attached summary judgment evidence, arguing that they were served on Spaghetti Works one

day late. However, Spaghetti Works failed to obtain a ruling on its objections from the trial court and, consequently, has waived this complaint for appellate review. *See* TEX.R.APP. P. 33.1(a)(2)(A). The objected-to evidence remains part of the summary judgment record. *Cain v. Rust Indus. Cleaning Servs., Inc.,* 969 S.W.2d 464, 466 (Tex.App.—Texarkana 1998, pet. denied); *Giese v. NCNB Tex. Forney Banking Ctr.,* 881 S.W.2d 776, 782 (Tex. App.—Dallas 1994, no writ).

mary judgment became final. This appeal ensued.

In their sole issue, appellants generally complain the trial court erred in granting Spaghetti Work's motion for summary judgment.

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). Because Spaghetti Works moved for summary judgment on both traditional and no-evidence grounds, and the trial court did not specify upon which ground it granted the motion, we can uphold the judgment on either ground. *See Barraza v. Eureka Co., a Div. of White Consolidation Industries, Inc.*, 25 S.W.3d 225, 231 (Tex.App.—El Paso 2000, pet. denied).

Rule 166a(i) allows a party, after adequate time for discovery and without presenting summary judgment evidence, to move for summary judgment on the basis that there is no evidence of one or more essential elements of a claim on which the adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). In reviewing a no-evidence summary judgment, we apply the same legal sufficiency standard as in a directed verdict. *Chapman v. King Ranch, Inc.*, 41 S.W.3d 693, 698 (Tex.App.—Corpus Christi 2001, no pet. h.); *Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.—Corpus Christi 1999, pet. denied). A no-evidence summary judgment is proper if the respondent fails to bring forth more than a scintilla of probative evidence in support of one or more essential elements of a claim. Tex.R. Civ. P. 166a(i). We must consider all the record evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered. Merrell Dow Pharmaceuticals v. Havner, 953 S.W.2d 706, 711 (Tex.1997); *Cole v. Central Valley Chemicals, Inc.*, 9 S.W.3d 207, 211 (Tex. App.—San Antonio 1999, pet. denied).

A traditional summary judgment, on the other hand, is proper if the movant establishes there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether a genuine issue of material fact exists, we view as true all evidence favorable to the respondent and resolve all doubts in his favor. *Nixon*, 690 S.W.2d at 548–49.

Section 2.02(b) of the Texas Alcoholic Beverage Code provides, in relevant part:

> Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action under this chapter ... upon proof that:
>
> (1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and
>
> (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

Tex. Alco. Bev.Code Ann. § 2.02(b)(1), (2) (Vernon 1995).

We first determine whether summary judgment was properly granted on "no-evidence" grounds. Spaghetti Works moved for a no-evidence summary judgment on the basis that appellants could produce no evidence to establish that, at the time Diosdado was served, it was ap-

parent to Spaghetti Works that she was obviously intoxicated to the extent she presented a clear danger to herself and others. Appellants maintain summary judgment was improper because Diosdado's level of intoxication was visible, evident, and easily observed and because she was intoxicated to the extent that she presented a clear danger to herself and others.

It is undisputed Diosdado was intoxicated at the time of the collision. According to appellants' expert, James C. Garriot, the vitreous humor level, the more reliable sample, revealed her blood alcohol content was .228 g/dL at the time of the accident. Garriot opined that Diosdado's state of intoxication would have been in the stage of "confusion" around 6:00 p.m., and in the stage of "excitement" between 5:00 and 6:00 p.m., during which time she was present at Spaghetti Works. The manifestations of her intoxication during these times would have included, "impaired perception, memory and comprehension, increased reaction time, sensory motor incoordination, impaired balance, drowsiness, disorientation, mental confusion, general muscular incoordination, and slurred speech." Those who observed her would have noticed "glassy eyes, clumsiness in any motion, staggering or unsteady gait while walking, and inappropriate response (such as aggressiveness) or slurring of speech." Garriot concluded:

> While it is true that tolerance to the effects of alcohol does occur to some degree in very regular and heavy drinkers of alcohol, enabling some drinkers to accommodate for the obvious effects of intoxication to a point, it is my belief that Ms. Diosdado would have been in a state of intoxication that would have been obvious to an ordinary observer, or to anyone who had any interaction with her during

the time period from 5:00 [p.m.] to 6:15[p.m.].

Villarreal, who consumed approximately the same amount of alcohol as Diosdado, was unable to start her car upon leaving Spaghetti Works and attempted to start her car with coins. Villarreal testified that when she arrived at the accident, she had a feeling Diosdado was involved. However, Villarreal testified Diosdado was fine when she left the bar and was not exhibiting signs of intoxication. Moreover, the employees of Spaghetti Works testified Diosdado never exhibited any signs of intoxication while at the bar or in the restaurant area.

A disputed fact may be proved by circumstantial evidence. *Blount v. Bordens,* Inc., 910 S.W.2d 931, 933 (Tex. 1995); *Perseus v. Canody,* 995 S.W.2d 202, 207 (Tex.App.—San Antonio 1999, no pet.). It is the right of the fact-finder to weigh the evidence, assess the credibility of witnesses, and draw reasonable inferences from the evidence. *Hammerly Oaks, Inc. v. Edwards,* 958 S.W.2d 387, 392 (Tex. 1997).

Here, the record contains evidence from which the jury could infer Diosdado's intoxication was apparent to the provider. As noted, Diosdado and Villarreal consumed several bottles of wine on the afternoon in question. They ordered two bottles while at Spaghetti Works, and consumed at least one and a third bottles. They each consumed approximately the same amount of wine. Upon leaving Spaghetti Works, Villarreal was unable to start her car, and attempted to start her car with coins. The parties agree that Diosdado and Villarreal left the bar around 6:15 p.m. Diosdado was killed in an automobile collision some fifteen to twenty

minutes after leaving Spaghetti Works.[4] Her blood alcohol content was .228 according to the vitreous humor level, or .48 according to the police report. According to Garriot, "Diosdado would have been in a state of intoxication that would have been obvious to an ordinary observer, or to anyone who had any interaction with her during the time period from 5:00 to 6:15 p.m."

Although neither Villarreal nor Spaghetti Works's employees testified that Diosdado exhibited signs of intoxication while at Spaghetti Works, the above evidence is circumstantial evidence tending to prove the same. In *Perseus, Inc. v. Canody*, 995 S.W.2d 202, 206–07 (Tex.App.— San Antonio 1999, no pet.), the San Antonio Court of Appeals opined that section 2.02 does not require evidence that the provider actually witness the intoxicated behavior. Instead, for the conduct to be apparent to the provider, it must have been "visible, evident, and easily observed." *Id.* at 206. As the court noted, if courts were to construe the statutory language "apparent to the provider" as a requirement that the plaintiff proffer evidence that the provider actually witnessed the intoxicated behavior, "then a provider of alcohol could always escape liability by merely turning a blind eye to signs of intoxication that are plain, manifest, and open to view." *Id.*

Spaghetti Works notes that Garriot did not state in his report that Diosdado's intoxication level was such that she would have been a danger to herself or to others, as required by section 2.02 of the alcoholic beverage code. We, however, find some probative evidence in support of this element. A jury could infer from the circumstantial evidence, including Diosdado having consumed the same amount of alcohol and being in a similar state as Villarreal when she left Spaghetti Works, that Diosdado was a danger to herself and others.

We conclude appellants raised more than a scintilla of evidence that at the time the provision occurred it was apparent to Spaghetti Works that Diosdado was obviously intoxicated to the extent that she presented a clear danger to herself and others. Likewise, we conclude Spaghetti Works failed to conclusively establish, under its traditional summary judgment motion, that Diosdado's intoxication was not apparent to the provider. Although employees of Spaghetti Works testified Diosdado did not exhibit signs of intoxication, Garriot's expert report, along with other circumstantial evidence, establishes a genuine issue of material fact regarding whether Diosdado's intoxication was apparent to the provider.

Accordingly, the trial court's granting of summary judgment was improper. Appellant's sole issue is sustained. We do not reach appellant's argument that summary judgment was improper because there was probative evidence on the issue of proximate cause, as it is not dispositive of this appeal. *See* Tex.R.App. P.

In this case, Diosdado's fatal automobile accident occurred between fifteen to twenty minutes after leaving Spaghetti Works. Moreover, in the present case, unlike *McIver*, appellants provided an expert report explaining how Diosdado would have likely behaved while at Spaghetti Works given the amount of alcohol consumed.

4. Spaghetti Works cites *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 90–92 (Tex.App.— Houston [st Dist] 1998, pet. denied) for the proposition that mere involvement in an automobile accident after leaving the bar does not raise a fact issue regarding the individual's level of intoxication while at the bar. In *McIver*, however, the accident occurred a full hour after the driver left the bar. *Id.* at 92.

The judgment of the trial court is REVERSED and REMANDED.