NUMBER 13-05-446-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JACQUELINE MICHELLE WEDGEWORTH, Appellant,


v.



CHRISTUS SPOHN HEALTH SYSTEMS

CORP., D/B/A CHRISTUS SPOHN 

HOSPITAL SHORELINE, Appellee.

 


On appeal from the 105th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Benavides


Memordandum Opinion by Justice Yañez



 By three issues, appellant, Jacqueline Michelle Wedgeworth, challenges the
summary judgment granted in favor of appellee, Christus Spohn Health Systems
Corporation d/b/a Christus Spohn Hospital Shoreline ("Spohn"). Specifically, appellant
contends the trial court erred in granting summary judgment in Spohn's favor on her claims
for (1) fraud and negligent misrepresentation, (2) violations of her due process rights, and
(3) intentional infliction of emotional distress. We affirm, in part, and reverse and remand,
in part.

Factual Background


 Appellant, a registered nurse, worked in Spohn's endoscopy unit between 1998 and
2002. Diane Kaiser, her supervisor, was in charge of the unit. According to appellant,
Spohn's unwritten policy permitted nurses to perform a procedure known as "roll and
sleep," which was used to prepare patients for an endoscopic procedure. Under the
procedure, nurses--without the presence of a physician--sedated the patient, and with the
assistance of an endoscopic technician, observed the insertion of a colonoscope up to the
patient's cecum. (1) 

 On January 17, 2002, appellant was the nurse in charge of a colonoscopy to be
performed by Dr. Fred Brackett. Pursuant to Spohn's policy and Dr. Brackett's orders,
appellant sedated the patient and observed a technician insert the scope. At that point,
appellant learned that Dr. Brackett had been detained and could not be present to perform
the colonoscopy. Dr. Brackett instructed appellant by telephone to continue with the
procedure and begin removing the scope. Appellant complied, and advised Dr. Brackett
that she and the technician had discovered a small polyp. In accordance with the doctor's
instructions, a second, more experienced technician removed the polyp. The doctor
instructed appellant to continue removing the scope and complete the procedure. The
entire procedure was performed without Dr. Brackett's presence or supervision. 

 Approximately a week later, Kaiser learned of the incident and requested that
appellant meet with her and Sarah McMullar, Spohn's risk-management officer. Following
the meeting, appellant was placed on paid administrative leave for several days; the matter
was referred to Spohn's Peer Review Committee. At the conclusion of the peer review
process, appellant was told that the incident was referred to the State Board of Nurse
Examiners. Following a second paid administrative leave, appellant returned to work, but
was told not to return to the endoscopy unit because her presence would be disruptive;
instead, she was assigned to a position reviewing charts in the quality assurance
department. Eventually, the State Board investigation of the matter concluded with no
adverse action taken against appellant.

Procedural Background


 Appellant sued Spohn, alleging fraud, negligent misrepresentation, violation of her
procedural due process rights, and intentional infliction of emotional distress. Spohn filed
a motion asserting both traditional and no-evidence grounds for summary judgment. In
support of its motion, Spohn attached evidence, consisting of (1) appellant's deposition
testimony, (2) the "Employee Discipline Report" issued by Spohn to appellant, (3) Kaiser's
deposition testimony, and (4) deposition testimony by Nora Frazier, Spohn's chief nurse
executive. 

 In its no-evidence motion, Spohn contends appellant's claim for violation of her due
process rights fails because there is no evidence that a private right of action exists for
alleged violations of peer review procedures. (2) With regard to appellant's fraud claim,
Spohn contends there is no evidence (1) that Spohn made a material representation that
was false, (2) that Spohn made such a representation knowing it was false or with reckless
disregard as to its falsity, or (3) that appellant actually or justifiably relied on the alleged
misrepresentation. As to appellant's negligent misrepresentation claim, Spohn contends
there is no evidence (1) that it made a false representation, (2) that it acted negligently in
communicating its policies, or (3) that appellant relied upon the alleged misrepresentation. 
With regard to appellant's intentional infliction claim, Spohn contends there is no evidence
(1) that its conduct was extreme or outrageous or (2) that appellant suffered severe
emotional distress. In its traditional motion, Spohn challenged the same elements of
appellant's claims. 

 In support of her response, appellant attached (1) her own affidavit; (2) excerpts
from Frazier's deposition testimony; (3) excerpts from Kaiser's deposition testimony; (4) 
minutes from several staff meetings of the endoscopy unit; (5) excerpts from her own
deposition testimony, and attachments to her testimony; (6) Spohn's "Statement of Ethics"
and its nursing peer review policies; and (7) three "expert reports" supporting various
aspects of appellant's allegations. 

 Following a hearing on March 1, 2005, the trial court announced on April 8, 2005,
that it was granting Spohn's motion for summary judgment. On April 11, 2005, the trial
court signed an order granting judgment in Spohn's favor without stating the grounds for
the ruling. This appeal ensued. 

 Standard of Review and Applicable Law 


 The standard of review for the grant of a motion for summary judgment is
determined by whether the motion was brought on no-evidence or traditional grounds. (3) A
no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court
applies the same legal sufficiency standard on review. (4) In an appeal of a no-evidence
summary judgment, this Court reviews the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. (5) If the non-movant produces
evidence to raise a genuine issue of material fact, summary judgment is improper. (6) 

 All that is required of the non-movant is to produce a scintilla of probative evidence
to raise a genuine issue of material fact. (7) "Less than a scintilla of evidence exists when the
evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" (8) 
Conversely, more than a scintilla exists when the evidence "rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions." (9) In determining
whether the non-movant has produced more than a scintilla of evidence, we review the
evidence in the light most favorable to the non-movant, crediting such evidence if
reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could
not. (10) The burden of producing evidence is entirely on the non-movant; the movant has
no burden to attach any evidence to the motion. (11) We may not consider any evidence
presented by the movant unless it creates a fact question. (12) 

 When a party moves for summary judgment under both rules 166a(c) and 166a(i)
of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under
the standards of rule 166a(i). (13) If the appellant fails to produce more than a scintilla of
evidence under that burden, then there is no need to analyze whether appellee's summary
judgment proof satisfies the less stringent rule 166a(c) burden. (14)

Fraud


 By her first issue, appellant contends the trial court erred in granting summary
judgment in Spohn's favor on her fraud and negligent misrepresentation claims. We begin
by addressing appellant's challenge to the summary judgment in Spohn's favor as to her
fraud claim.


 To prove a fraud claim, a plaintiff must show (1) that a material representation was
made; (2) the representation was false; (3) when the representation was made, the
speaker knew it was false or made it recklessly without any knowledge of the truth and as
a positive assertion; (4) the speaker made the representation with the intent that the other
party should act upon it; (5) the party acted in reliance on the representation; and (6) the
party thereby suffered injury. (15) In its no-evidence motion, Spohn argued that appellant
lacked any evidence that Spohn (1) falsely represented its delegation policy, (2) intended
to deceive appellant, or (3) knew the alleged representations regarding its policy were
false. Spohn also argued there was no evidence appellant justifiably relied on any 
representation concerning Spohn's delegation policy. 

 In her response, appellant asserts that Spohn (specifically, Kaiser) falsely
represented to her that "[n]urses and staff could perform any delegated task that the
nurses and staff were qualified and comfortable performing." (16) In the section of her
response addressing fraud, appellant cites no evidence that Kaiser intended to deceive her
in communicating the delegation policy to her. Similarly, in her appellate brief, appellant
asserts that "[e]vidence attached to Spohn's motion for summary judgment, as well as [her]
own evidence" establishes that Kaiser intended to deceive her. However, appellant cites
no evidence in the record supporting this element of her fraud claim. We conclude that
appellant presented no evidence of Spohn's intent to deceive. Accordingly, we hold the
trial court did not err in granting summary judgment in Spohn's favor as to appellant's fraud
claim. We overrule that portion of appellant's first issue challenging summary judgment
as to her fraud claim. 

Negligent Misrepresentation 


 Appellant's first issue also challenges the summary judgment granted in Spohn's
favor as to her claim for negligent misrepresentation. "The elements of a cause of action
for [negligent misrepresentation] are: (1) the representation is made by a defendant in the
course of his business, or in a transaction in which he has a pecuniary interest; (2) the
defendant supplies 'false information' for the guidance of others in their business; (3) the
defendant did not exercise reasonable care or competence in obtaining or communicating
the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the
representation." (17)

 Appellant contends that Kaiser misrepresented Spohn's delegation policy to her. 
As to the first element, regarding Spohn's pecuniary interest in making the
misrepresentation, appellant presented seven deposition exhibits, reflecting minutes from
several "Endoscopy Associate Meetings," between July 31, 2001 and February 4, 2002. 
The minutes reflect Spohn's concern for being "above budget" in the volume of patients
processed through the endoscopy unit. 

 As to the "false information" element and Spohn's failure to exercise reasonable
care in communicating the delegation policy, appellant relies on Kaiser's misrepresentation
to her that (1) "[n]urses and staff could perform any delegated task that they were qualified
to perform and were comfortable in performing, and (2) the doctor was ultimately
responsible for all tasks delegated." Appellant offered evidence establishing that the
delegation policy was unclear. Nora Frazier, the chief nurse executive and "integrity
officer" in charge of investigating whether procedures that should have been performed
by doctors were, in fact, being performed by nurses, testified as follows: 

A [Frazier]: Couple of reasons. Number one, my understanding of
Michelle's record is that it was a good record, that she was a good nurse--is
a good nurse, who was in a situation where there were some gray areas with
respect to practice. And I do believe that there were some mitigating factors
in the whole incident for which we as a system have some responsibility.


Q [counsel]: Okay. And what were those mitigating factors, in your opinion?


A: I think the fact that the scope of nursing practice boundaries, as I
mentioned earlier, were fuzzy. That, you know, perhaps the whole issue of
delegated medical acts and what was appropriate or inappropriate had not
been embedded thoroughly from a Board of Nursing standpoint. It's fine to
know what the Board of Nurse Examiners feels is appropriate, but no one
queried the Board of Nurse Examiners to find out what they felt was
appropriate or not appropriate for nursing practice. And so for those
reasons, I felt that it was appropriate to try to help Michelle.


Q: Okay. Would it be fair to say that something that caused everything to
be kind of fuzzy was the lack of clear and precise policies and procedures
within the unit with regard to roll and sleep and what duties could be
delegated?


A. Yes. 


 Similarly, Kaiser testified that she sought advice from Margaret O'Donnell, Spohn's 
counsel, as to what tasks a physician could properly delegate; Kaiser testified that it wasn't
a "black and white" situation. Based on the response from O'Donnell, Kaiser testifed that 
the policy was "physicians can delegate if they feel like the person is competent,
comfortable, that they're not representing themselves as a physician." After the incident,
Kaiser testified that several doctors approached her and said that the practice of doctors 
ordering nurses to start a procedure without the doctor being present was "just not right"
and that it was "about time that [the practice] came to somebody's attention." When asked
what alternatives were available to appellant when Dr. Brackett instructed her to begin
withdrawing the scope, Kaiser testified that the alternative was to have "never started the
procedure."

 The minutes of the Endoscopy Associate Meeting dated February 4, 2002,
(approximately two weeks after the incident at issue) reflect the following notation regarding
the delegation policy:

Policies and Procedures


Reviewed the conscious sedation policy and procedure. Also discussed the
policy and procedures for endoscopic manipulation of the endoscope during
procedure. This policy is still being written, but at present the procedure is
not to be started without the physician present in the room. Conscious
sedation is not to be administered without the physician present in the room
and the scope is not to be inserted into the patient without the physician in
the room. All associates are to follow these procedures.


 We conclude there is evidence that Spohn was aware that some physicians were
ordering nurses to start procedures without the physician being present, knew there were
no clear and precise policies and procedures within the unit as to what duties could be
delegated, and did not attempt to clarify the delegation policy until after it began
investigating the incident. We conclude the evidence raises a fact issue regarding whether
Spohn negligently communicated its delegation policy because there was no clear policy.

 With regard to whether appellant suffered pecuniary loss because she justifiably
relied on Spohn's representation of its policy, appellant testified that even though she felt
it was improper to begin a procedure without the doctor being present, she followed Dr.
Brackett's order because he had said he would assume responsibility for it. The incident
occurred on January 17, 2002; the investigation by the Board of Nurse Examiners was not
concluded until July 2003. Appellant testified that she did not work as a nurse during the
pendency of the investigation because she was "embarrassed," "uncertain of the outcome,"
and did not want to reveal the investigation to a prospective employer. 

 Reviewing the evidence in the light most favorable to the non-movant, crediting such
evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable
jurors could not, (18) we hold that appellant presented more than a scintilla of evidence raising
a genuine issue of material fact as to each element of her negligent misrepresentation
claim. (19) Accordingly, we hold the trial court erred in granting summary judgment in Spohn's
favor as to appellant's negligent misrepresentation claim. We sustain that portion of
appellant's first issue, and reverse the summary judgment as to that claim. (20)

Violation of Due Process Rights 


 By her second issue, appellant contends that Spohn violated her procedural due
process rights by failing to follow its own policies and procedures. Specifically, appellant
contends that Spohn's investigation of the incident denied her certain rights and
guarantees outlined in Spohn's peer review process. Appellant argues her due process
rights are implicated because she has a property interest in her employment and her
nursing license. 

 In its motion, Spohn argued it is entitled to summary judgment on appellant's
violation of due process claim because there is no private right of action alleging a violation
of the Texas Nursing Practice Act ("TNPA"), (21) including alleged violations of peer review
procedures. According to Spohn, the TNPA peer review requirements are identical to
those applicable to physicians under the Texas Medical Practice Act ("TMPA"); (22) because
no private right of action exists under the TMPA, (23) no private right of action exists under
the TNPA. 

 In her response, appellant simply details the various alleged violations of Spohn's 
policies and procedures. With respect to Spohn's assertion that no private right of action
exists under the TNPA, appellant "does not rely upon the [TNPA] as a basis for her action." 
Appellant argues that she has a claim for violation of her due process rights "not under the
[TNPA], but with relation to the policies and procedures created by [Spohn] with regard to
the due process that should have been afforded to [her]." Thus, appellant asserts that
Spohn violated her procedural due process rights by failing to follow its own policies and
procedures. However, appellant cites no evidence in support of her position that "a cause
of action exist[s]" based on Spohn's alleged violations of its "policies and procedures." We
conclude that appellant presented no evidence in response to Spohn's challenge to
appellant's claim that her due process rights were violated. The trial court did not err in
granting judgment in Spohn's favor as to this claim. We overrule appellant's second issue. 

Intentional Infliction of Emotional Distress 


 In her third issue, appellant contends the trial court erred in granting summary
judgment in Spohn's favor as to her claim for intentional infliction of emotional distress. To
prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish that
(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme
and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and
(4) the plaintiff suffered severe emotional distress. (24) A defendant's conduct satisfies the
second element only if it is "'so outrageous in character, and so extreme in degree, as to
go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community.'" (25) In its motion, Spohn challenged the second and
fourth elements, arguing there was no evidence (1) its alleged actions were extreme and
outrageous or (2) that appellant suffered severe emotional distress. 

 With respect to the challenged fourth element--that appellant suffered severe
emotional distress--appellant responded:

There is evidence to show that [appellant] is mentally unable to seek
employment as a nurse due to the treatment of [appellant] by [Spohn] and
the fear that this could happen again, and there is evidence in the record that
this type of action by [Spohn] could cause severe emotional trauma similar
to post-traumatic stress syndrome.


The "evidence" cited by appellant is an "expert report," which states, in relevant part,
"[t]hreat of loss of licensure for a professional is an extremely stressful and traumatic event. 
The professional can experience symptoms very similar to Post Traumatic Stress Disorder
and Major Depression." The report does not mention appellant specifically, nor does it
state that appellant has suffered any emotional distress. Appellant cites no other evidence
in support of her assertion that she suffered severe emotional distress. We conclude
appellant presented no evidence that she suffered severe emotional distress. Accordingly,
the trial court did not err in granting summary judgment in Spohn's favor on appellant's
claim for intentional infliction of emotional distress. We overrule appellant's third issue.

Conclusion 


 We reverse the trial court's summary judgment in Spohn's favor as to appellant's
negligent misrepresentation claim and remand to the trial court for further proceedings. 
As to appellant's claims for fraud, violation of her due process rights, and intentional
infliction of emotional distress, we affirm the trial court's judgment in Spohn's favor. 

 

 

 LINDA REYNA YAÑEZ,

 Justice





Memorandum Opinion delivered and filed 

this the 10th day of April, 2008.


 
1. The cecum is a large pouch forming the beginning of the large intestine.
2. Appellant bases her claim that her procedural due process rights were violated on her contention
that Spohn's peer review process was flawed.
3. See Tex. R. Civ. P. 166a(c), (i); see also Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex.
App.-Corpus Christi 2003, no pet.) (op. on reh'g). 
4. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006); Ortega, 97 S.W.3d at 772. 
5. City of Keller v. Wilson, 168 S.W.3d 802, 825 (Tex. 2005) (noting that review of a "no-evidence"
motion for summary judgment is effectively restricted to the evidence contrary to the motion); Ortega, 97
S.W.3d at 772. 
6. Tex. R. Civ. P. 166a(i).
7. Ortega, 97 S.W.3d at 772. 
8. Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). 
9. Id. (citing Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). 
10. Tamez, 206 S.W.3d at 582; City of Keller, 168 S.W.3d at 827. 
11. Tex. R. Civ. P. 166a(i).
12. Binur v. Jacobo, 135 S.W.3d 646, 651 (Tex. 2004); Newkumet v. Allen, 230 S.W.3d 518, 521 (Tex.
App.-Eastland 2007, no pet.).
13. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 
14. Id. 
15. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). 
16. Appellant cites "Kaiser Dep. Pg. 47." We note that although appellant attached excerpts of Kaiser's
deposition testimony to her response, she did not attach any of the excerpted pages cited in her response. 
The portions of Kaiser's deposition testimony cited by appellant in support of her response are included in
Spohn's summary judgment evidence. 
17. Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 n.24 (Tex. 2002) (quoting Fed. Land Bank
Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)). 
18. See City of Keller, 168 S.W.3d at 827. 
19. See Ortega, 97 S.W.3d at 772. 
20. Where, as here, the trial court's order granting summary judgment does not specify the basis for
the ruling, we must affirm the judgment if any of the theories advanced by the movant are meritorious. Vargas
v. K.K.B., Inc., 52 S.W.3d 250, 254 (Tex. App.-Corpus Christi 2001, pet. denied). Spohn moved for traditional
summary judgment on Wedgeworth's negligent misrepresentation claim, contending that it had: 


conclusively negated three of the elements of [Wedgeworth's] negligent misrepresentation
cause of action. In particular, [Spohn] has established that it did not supply false information
to [Wedgeworth]; that it did not fail to exercise reasonable care or competence in
communicating the information to [Wedgeworth]; and that [Wedgeworth] did not actually or
justifiably rely on [Spohn's] alleged misrepresentation.


Spohn presented no analysis explaining how its evidence "conclusively negated" the identified elements of
Wedgeworth's claim. Nonetheless, for the reasons detailed above, we hold that Spohn failed to conclusively
negate the elements of Wedgeworth's negligent misrepresentation claim. Accordingly, we hold that the trial
court could not properly have granted Spohn's traditional motion for summary judgment as to that claim. 
21. See Tex. Occ. Code Ann. §§ 301.001-.607 (Vernon 2004 & Supp. 2007).
22. See id. §§ 160.001-.102 (Vernon 2004 & Supp. 2007).
23. See Cole v. Huntsville Mem'l Hosp., 920 S.W.2d 364, 373 (Tex. App.-Houston [1st Dist.] 1996, writ
denied) (holding no private right of action exists under TMPA).
24. Kroger Tex. Ltd. P'ship v. Suberu, 216 S.W.3d 788, 796 (Tex. 2006). 
25. Id. (citing Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second)
of Torts § 46 cmt. d (1965))).