**Opinion issued January 10, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00488-CV

———————————

**EVAN TOLEDO, Appellant**

**V.**

**SILVER EAGLE DISTRIBUTORS, L.P., Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-55595**

---

## MEMORANDUM OPINION

Appellant, Evan Toledo, challenges the trial court's summary judgment rendered against him in his suit against appellee, Silver Eagle Distributors, L.P.

("Silver Eagle"), for negligence and violations of the Texas Dram Shop Act.[1]  In two issues, Toledo contends that the trial court erred in granting Silver Eagle summary judgment.

We affirm.

## Background

In his fifth amended original petition, Toledo alleges that the defendants, Silver Eagle, Frontier Fiesta Association, the Sigma Pi National Fraternity ("Sigma Pi"), and Aramark University Food Service Cougar Catering ("Aramark") provided alcohol to Mario Perez, a bouncer at Frontier Fiesta, an event held at the University of Houston.  Toledo specifically alleges that Perez, while obviously intoxicated, assaulted him at Frontier Fiesta and Silver Eagle violated the Texas Dram Shop Act by delivering and providing alcohol "to minors and intoxicated individuals who subsequently caused injury."  Toledo also alleges that Silver Eagle was negligent in the hiring, training, and supervision of its employees.  Finally, Toledo alleges that Silver Eagle and the other defendants are "guilty of joint enterprise" and, thus, "liable for all torts that were committed while acting in the scope of the enterprise."

In its original answer, Silver Eagle generally denied Toledo's allegations and asserted that "the incident in question was proximately caused, either solely or

---

[1]    *See* TEX. ALCO. BEV. CODE ANN. §§ 2.01–2.03 (West 2007).

2

partially," by third parties and the carelessness and negligence of Toledo. Silver Eagle also asserted that it was not a "provider" of alcohol as defined in the Texas Dram Shop Act.[2] In its summary-judgment motion, Silver Eagle argued that the Dram Shop Act did not apply to Silver Eagle because it was a wholesaler and not a provider of alcohol, and Toledo had presented no evidence of its negligence or joint enterprise with the other defendants.

Silver Eagle attached to its motion its Texas Alcoholic Beverage Commission permit, which was classified as a "General Class B Wholesaler's Permit" and a "Private Carrier's Permit." It also attached the affidavit of Vince Tydlacka, a "Team Leader" who supervised Silver Eagle's deliveries to the University of Houston. Tydlacka testified that Silver Eagle "is a wholesaler and distributor of alcoholic beverages" and "not a provider of alcohol." He explained that Silver Eagle simply "sells to retailers, who in turn sell directly to consumers," and it "does not sell or serve alcoholic beverages directly to consumers." At Frontier Fiesta, Tydlacka was personally responsible for receiving orders from Aramark for kegs of alcohol and bags of ice. The student organizations present at Frontier Fiesta would purchase beer directly from Aramark, who would then notify Silver Eagle "of the name and location of the organization where Silver Eagle was to deliver the beer." Silver Eagle would then deliver the beer to the specific "tent

---

[2] *See id.* § 2.01(1).

area" where the organization was located. Tydlacka noted that Silver Eagle's employees would spend "no longer than a minute or two" at the organizations' tents and would "immediately depart[]" the area after delivering the order. Finally, Tydlacka explained that:

> [N]either I nor any other Silver Eagle employee ever (i) had any contact with the purchasers of the alcohol (other than occasionally being shown where to specifically deposit the beer), (ii) had any contact with the consumers of the alcohol Silver Eagle delivered to the various organizations, (iii) had any contact with any persons visiting the tent areas to which Silver Eagle delivered the beer, (iv) connected a beer keg to dispensing equipment (e.g., a tap) to enable the beer to be poured from keg, (v) sold or served alcohol to any person, (vi) identified which persons were consuming alcohol, or the age or level of intoxication of any persons possibly consuming alcohol, (vii) exercised any control over the area where a delivery was being made, or (viii) exercised any control over any person at or near a tent area where delivery of beer was being made.

In his response to Silver Eagle's motion, Toledo asserted that Perez struck Toledo, "knocked him to the ground," and "continued beating him" after an argument as to whether Toledo could enter the Sigma Pi tent. He asserted that Silver Eagle "took the beer directly to the tents where the beer was consumed without limit or control or supervision of any kind" and "sold and provided alcohol directly to the fraternity tent where [Perez] was a bouncer and where he became intoxicated and assaulted" Toledo.

Toledo attached to his response the deposition testimony of Tydlacka. Tydlacka testified in his deposition that the student organizations would place their

4

orders directly with retailer Aramark, which would provide Silver Eagle with an invoice and direct Silver Eagle as to where to deliver the ordered supplies. He noted that Silver Eagle "did not sell any product to anyone other than Aramark" at the event and a Silver Eagle employee would deliver the kegs, beer, ice, and other supplies directly to the organization's tent. The extent of any interaction between Silver Eagle's employees and a person at the tent area would be to indicate where to deposit the supplies. Toledo explained that Silver Eagle employees would simply "drop[]" off the supplies and leave immediately. In exchange for its delivery services, Silver Eagle received checks signed by Aramark at the end of the event.

Tydlacka further testified in his deposition that before the event, he met with an Aramark representative to discuss the Frontier Fiesta arrangement. At the meeting, Tydlacka received information regarding "product," "times," and "locations." He noted that while Aramark had a license to sell alcohol at the event, Silver Eagle merely had a license to provide alcohol to Aramark. And Aramark's license restricted the times during which it could sell alcohol and Silver Eagle could deliver alcohol.

Toledo also attached to his response the deposition of Allisdair McClean, Aramark's resident district manager. McClean testified that prior to Frontier Fiesta, he met with representatives from the University of Houston and the Frontier

5

Fiesta Association. At this meeting, at which Silver Eagle was not present, the parties created a "Memo of Understanding" that "outlined what the event was, the prices and the terms around that." Silver Eagle had simply provided a "service of delivering" for Aramark at Frontier Fiesta and other events in the past. And Aramark would pay Silver Eagle directly for the alcohol orders, with the University of Houston receiving a percentage of the total food and alcohol sales.

The trial court granted Silver Eagle's summary-judgment motion, noting that its order was interlocutory because Toledo had pending claims against other parties. The trial court later entered another "Order Granting Interlocutory Summary Judgment for Silver Eagle," specifically ordering that Toledo take-nothing on "his claim for joint-enterprise." Toledo later settled his claims against Frontier Fiesta Association and non-suited his claims against Sigma Pi, Aramark, and Perez.

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law because there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Farah v. Mafrige & Kormanik*, 927 S.W.2d 663, 670 (Tex. App.—Houston [1st Dist.] 1996, no writ).

To assert a no-evidence summary-judgment motion, a movant must specifically assert that there is no evidence of an essential element of the adverse party's cause of action or affirmative defense. TEX. R. CIV. P. 166a(i); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Although the non-moving party is not required to marshal its proof in response, he must present evidence that raises a genuine, material fact issue on each of the challenged elements. TEX. R. CIV. P. 166a(i). A no-evidence summary-judgment motion may not properly be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *Id.; Spradlin v. State*, 100 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2002, no pet.). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When reviewing a summary-judgment motion, we assume that all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Nixon*, 690 S.W.2d at 548–49; *Spradlin*, 100 S.W.3d at 377.

## Texas Dram Shop Act

In his first issue, Toledo argues that trial court erred in granting Silver Eagle's summary-judgment motion because when Silver Eagle delivered alcohol to the tent where Perez became obviously intoxicated, Silver Eagle qualified as a "provider" under the Texas Dram Shop Act.

The Texas Dram Shop Act imposes civil liability on providers of alcoholic beverages for damages resulting from the sale or service of alcohol to a person who is obviously intoxicated. *See* TEX. ALCO. BEV. CODE. ANN. §§ 2.01–2.03 (West 2007); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007) (explaining history of Texas Dram Shop Act). The Dram Shop Act reads, in pertinent part:

> Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action under this chapter . . . upon proof that:
>
> (1) at the time the provision occurred it was apparent to the provider that the individual . . . was obviously intoxicated to the extent that he presented a clear danger to himself and others; and
>
> (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

TEX. ALCO. BEV. CODE. ANN. § 2.02(b).

Only a "provider," as defined by the Dram Shop Act, is liable under section 2.02(b). *Harris v. Houston Livestock Show & Rodeo, Inc.*, 365 S.W.3d 28, 32 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Smith v. Merritt*, 940 S.W.2d 602, 605 (Tex. 1997) (noting that section 2.02(b) "creates a statutory cause of action against *commercial* providers only") (emphasis in original); *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993) (holding Dram Shop Act applies only to commercial providers). "Provider" is defined as "a person who sells or serves an alcoholic beverage under the authority of a license or permit . . . or who otherwise sells an alcoholic beverage to an individual." TEX. ALCO. BEV. CODE ANN. § 2.01(1).

In support of its argument that it did not "provide" alcohol to Perez as statutorily defined, Silver Eagle relies on *Schmidt v. Centex Beverage, Inc.*, 825 S.W.2d 791 (Tex. App.—Austin 1992, no writ). In *Schmidt*, the plaintiff trespassed onto the grounds of an Austin festival, where a confrontation with the festival's volunteers left him with a broken neck. *Id.* at 792–93. He then brought suit against the wholesale beer distributors for violations of the Dram Shop Act and other causes of action, asserting that the defendants had agents at the festival and "had reason to know alcohol would be consumed to excess at the event." *Id.* at 795. The court held that the defendant did not meet the statutory definition of

9

"provider" because it had no duty "to oversee the sale of alcohol to consumers." *Id.*

Toledo points to Silver Eagle's permits from the Texas Alcoholic Beverage Commission as evidence that Silver Eagle qualified as a "provider" because "liability under the Dram Shop Act is premised upon licensing." However, at the time of the incident, Silver Eagle had a General Class B Wholesaler's Permit and Private Carrier's Permit, which statutorily limited its actions to (1) selling beer in its original container to retailers authorized to sell it and (2) transporting beer to the retailers. *See* TEX. ALCO. BEV. CODE ANN. § 20.01 (West Supp. 2012); *id.* § 42.01 (West 2007). Thus, Silver Eagle's permit actually restricted it from providing alcohol directly to Perez, and there is no evidence in the record that Silver Eagle's conduct did not comply with the terms of its license.

Here, as in *Schmidt*, Silver Eagle acted only as a wholesaler, providing beer to organizations participating in the Frontier Fiesta based on Aramark's instructions. And Tydlacka repeatedly testified that Silver Eagle delivered alcohol only to the tents, did not have any contact with consumers, did not sell or serve alcohol to any individuals, and did not have any control over which individuals were served alcohol. As noted by Toledo in his brief to this Court, Aramark was "the only licensed provider of alcohol to the public among the Defendants." And there is no evidence that Silver Eagle sold or served alcohol directly to Perez, as

10

required by the Texas Dram Shop Act.[3] *See* TEX. ALCO. BEV. CODE ANN. § 2.01(1).

We conclude that Toledo presented no evidence demonstrating that Silver Eagle qualified as a "provider" under the Dram Shop Act. Accordingly, we hold that the trial court did not err in granting Silver Eagle's summary judgment on the ground that it violated the Dram Shop Act.

We overrule Toledo's first issue.

### Joint Enterprise

In his second issue, Toledo argues that the trial court erred in granting Silver Eagle's summary-judgment motion because he presented "ample evidence" of the existence of a joint enterprise between Silver Eagle, Aramark, and the Frontier Fiesta Association.

---

[3] In support of his argument that he need only prove that Perez demonstrated "obvious signs of intoxication" to establish that Silver Eagle is liable under the Texas Dram Shop Act, Toledo relies on several cases. However, each case cited by Toledo involves defendants who directly served alcohol to individuals, where it was undisputed that the defendants were "provider[s]" under the statute. *See Fay-Ray Corp. v. Tex. Alcoholic Beverage Comm'n*, 959 S.W.2d 362, 365, 369 (Tex. App.—Austin 1998, no pet.) (upholding revocation of restaurant's alcoholic beverage permit where restaurant waitress served plaintiff alcohol); *Bruce v. K.K.B., Inc.*, 52 S.W.3d 250, 256 (Tex. App.—Corpus Christi 2001, pet. denied) (holding more than scintilla of evidence existed that restaurant violated Dram Shop Act where plaintiffs were served by restaurant's bartender); *Perseus, Inc. v. Canody*, 995 S.W.2d 202, 207 (Tex. App.—San Antonio 1999, no pet.) (affirming jury verdict in favor of plaintiff against nightclub owner where nightclub served plaintiff alcohol); *Steak and Ale v. Borneman*, 62 S.W.3d 898, 902–04 (Tex. App.—Fort Worth 2001, no pet.) (holding evidence legally sufficient that restaurant violated Texas Dram Shop Act).

A successful claim based on a joint enterprise will make "each party thereto the agent of the other . . . to hold each responsible for the negligent acts of the other." *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974). To find a joint enterprise, there must be: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose; and (4) an equal right to a voice in the direction of the enterprise. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000); *Shoemaker*, 513 S.W.2d at 16–17.

### *Community of Pecuniary Interest*

In regard to the third factor, Toledo argues that because Silver Eagle, Aramark, and the University of Houston all benefited from the sales of alcohol, they shared a "common pecuniary interest." Toledo points to the following testimony from McClean as evidence of the existence a common pecuniary interest:

> Following your example, the $50-dollar keg would have been sold at whatever the rates were outlined in the agreements. Again, Silver Eagle would have been paid their $50. The university would have been paid, in whichever case that would fall 15 or 10 percent of the overall sales. And we obviously are funding the remainder of tax and labor and other.

The Texas Supreme Court has noted that the term "common business or pecuniary interest" does not mean a "community of pecuniary interest." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 527 (Tex. 2003). Thus, although two businesses

12

may have a common pecuniary interest in the sale of their products and each may stand to benefit financially from such a sale, this is different from a "community" in which the common purpose is shared "without special or distinguishing characteristics." *Id.* at 528; *see also Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 779 (Tex. App.—Texarkana 1996, writ denied). As such, a "franchisor, wholesaler, or supplier usually does not have a 'community of pecuniary interest' in the retail sales of its respective franchisees, retailers, or customers." *St. Joseph Hosp.*, 94 S.W.3d at 528. Although such entities "stand to benefit financially from the successful downstream marketing of their goods or services, their interests in those activities are not held in 'community' with the members of the latter." *Id.*

Here, Tydlacka testified that Silver Eagle is "a wholesaler and distributor of alcoholic beverages." Silver Eagle's permit from the Texas Alcoholic Beverage Commission was classified a "General Class B Wholesaler's Permit." And, McClean testified that Silver Eagle received payment based on how much beer Aramark directed it to deliver, and Aramark paid Silver Eagle directly for this service. When asked about the profit breakdown, McClean testified that Aramark would "just pay for [the ice and beer] prior like we do with anything else. So there was not I wouldn't say a profit sharing. We order a product. We pay whatever the agreed upon rate is for that." Later, McClean explained,

> Well, again, I just would say that there's not a split of profits; so maybe I'm getting hung up on that. Regardless of if there's a profit or

13

not, we are required as outlined in that Memo of Understanding to pay the University "X" percentage.

So if we made a dollar of profit or we didn't make a dollar of profit, it's irrelevant to the fact that Silver Eagle is going to get paid their $50. And the university is going to receive their commissions for whatever those sales would have been.

Thus, there existed a "special or distinguishing characteristic" as to Silver Eagle's and the other defendants' pecuniary interests. *See, e.g., Harris v. Houston Livestock Show & Rodeo, Inc.*, 365 S.W.3d 28, 35 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (holding that although defendant benefitted by receiving portion of revenues from drink sales, it did not share community of pecuniary interest when its pecuniary interest was calculated differently from drink provider); *Ely*, 927 S.W.2d at 779 (stating that court could find "no cases where a . . . wholesaler/retailer relationship has been determined to create [a] common pecuniary benefit" and holding that "[w]hen one party is selling vehicles wholesale to another to sell retail, there is not a pecuniary interest in a common purpose"). And Toledo presented no evidence that Silver Eagle shared a "community of pecuniary interests" with the other defendants.

*Equal Right to Control*

In regard to the fourth factor, an "equal right to a voice to control the enterprise," Toledo asserts that Silver Eagle "admits to having input into the method and means of accomplishing the purpose of the joint enterprise."

14

To establish an equal right to control a joint enterprise, each entity "must have an authoritative voice or . . . [s]ome voice and right to be heard." *Shoemaker*, 513 S.W.2d at 15. This right to control must extend over the same common purpose in which the parties have a common pecuniary interest. *St. Joseph Hosp.*, 94 S.W.3d at 529.

In support of its argument that Toledo failed to provide evidence of an equal right to control, Silver Eagle cites *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716 (Tex. 1995). In *Riley*, the court held that a radio station was not liable under the joint enterprise theory for a nightclub's violations of the Dram Shop Act. *Id.* at 719. The plaintiff emphasized that the nightclub priced its drinks based on the radio station's FM frequency, arguing that this demonstrated control over the nightclub. *Id.* However, the nightclub set the drink prices, was "licensed to sell alcohol, maintained absolute control over the provision of all the drinks," and was "best positioned to monitor the amount of liquor that patrons consumed." *Id.* Thus, the court held that there was no evidence of an equal right to control for the purposes of imposing joint liability. *Id.*

Likewise, here, McClean testified that the University of Houston set the price of beer sold to the organizations through a "Memo of Understanding" at a meeting with Aramark and the Frontier Fiesta. Silver Eagle was not present at the meeting. And, like the defendant in *Ripley*, Tydlacka testified that he was not

responsible for determining "whether anybody was or was not intoxicated" or for monitoring "how much alcohol was being purchased by a particular group or any individual." Instead, he testified that Silver Eagle employees would simply "drop[] off" alcohol at the locations designated by Aramark. And Aramark's license dictated the specific times that Silver Eagle should start and stop delivering beer.

Toledo argues that he established that Silver Eagle had an equal right to control because Tydlacka testified to meeting with Aramark before the Frontier Fiesta to determine "details" in how Silver Eagle and Aramark would "work[] together" at the event. However, Tydlacka testified that the purpose of that meeting was limited to "what products [Silver Eagle] was going to bring to the event" and information pertaining to "product," "times," and "locations." *See Riley*, 900 S.W.2d at 718–19 (holding that there was no evidence of right to control in Dram Shop claim where there was no evidence that defendants "exercised any right of control . . . over who was served, admitted, or ejected"). And because the only written agreement in the present case is the "Memo of Understanding," which Silver Eagle did not participate in drafting, there is no evidence of a contractual right to control the enterprise. *Compare Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 616 (Tex. 2000) (distinguishing *Ripley* and upholding jury finding that equal right to control existed between Texas Department of Transportation and Houston Metropolitan Transit Authority because contract gave parties an "equal right to

16

control" procedures for transit operations). Thus, Toledo presented no evidence that Silver Eagle had an "equal right to a voice to control the enterprise" at Frontier Fiesta.

Because Toledo presented no evidence on two essential elements of a joint enterprise, we hold that the trial court did not err in granting Silver Eagle's summary-judgment motion on the ground that it was not civilly liable as a joint enterprise.

We overrule Toledo's second issue.

## Conclusion

We affirm the judgment of the trial court.


                                                    Terry Jennings
                                                    Justice

Panel consists of Justices Jennings, Higley, and Sharp.

17